[Civ. No. 13827. Second Dist., Div. Two. Dec. 28, 1942.]

MARIE HILL et al., as Executrices, etc., Appellants, v. FRED B. DONNELLY, Individually and as Executor, etc., Respondent.

Roscoe R. Hess for Appellants.

Henry L. Walleck for Respondent.

MOORE, P. J.—This is an appeal from a judgment which decreed that a certain joint tenancy deed in favor of decedent and defendant was regularly executed, acknowledged and delivered and that it vested absolute legal title of the real property in defendant as the survivor of the joint tenants.

The primary contentions of appellants are (1) that the findings are insufficient to determine the issue raised by the pleadings and (2) that the evidence is insufficient to support a finding of a valid delivery of the deed.

The facts established by the proof are as follows: Decedent, Emma B. Donnelly, was the owner of lot 1 of the Wallace Brothers Tract in the city of Pasadena referred to in the evidence as the Molino Street property. She was the sister of plaintiff Hill, and of defendant. On the 8th day of June, 1933, decedent by grant deed conveyed lot 1 to her companion, Elizabeth Kessler. At the same time and as a part of the same transaction, Miss Kessler executed a deed conveying the same lot to decedent and defendant as joint tenants. The notary who took the acknowledgments of both of them was one Upton, a real estate broker of Pasadena who advised decedent that such deed would accomplish her purpose. Upon receiving both deeds from the ladies, he carried them away with him and kept them in his office for eight days when he left them with a title company to be recorded. Upon their return to Mr. Upton from the office of the county recorder he delivered both deeds to the decedent, who paid him for his services and the costs of recording and placed the deeds in her safety deposit box in a bank where they were found

after her decease. At the time of departing for the bank she stated to her companion that Fred did not need a deed to the property; that her name as well as Fred's was on the recorded deed and that if anything happened to her the property would be Fred's and if anything happened to Fred, the property would be hers; that she could not sell the property without Fred and Fred could not sell the property without her.

Defendant had no knowledge of the joint tenancy deed until about June 1, 1936. Before he gained such knowledge decedent had executed a will on May 13, 1936, by which she bequeathed to defendant and to her sister and her niece the "entire (estate) or residue of my estate, to be divided share and share alike. . . . " Attached to it was a codicil reading as follows: "As my brother Fred B. Donnelly is paying taxes on the property located at 54 South El Molino Avenue, Pasadena, California, I want him reimbursed for all taxes paid." He had no knowledge of decedent's intention to make the conveyance to him prior to June 1, 1936, except what he might have learned on the occasion in 1935 when she handed him the Pasadena tax bill for 1935 which showed that the property was assessed to himself and decedent as joint tenants. Inasmuch as he could not read, it cannot be said that he comprehended the significance of that tax bill.

By reason of certain statements made by decedent to her companion and the notary, at the time she effected the joint tenancy, with reference to her will and her confidence in Fred, plaintiffs have confused defendant's rights arising out of the joint tenancy deed with his alleged obligations arising from his alleged promises with reference to a will. They insist that the language of the subsequent will should be deemed to have been a part of the transaction of the delivery of the joint tenancy deed.

We are thus brought to a consideration of whether the transaction of decedent with Miss Kessler was competent to vest the title of lot 1 in decedent and defendant as joint tenants. In approaching this problem plaintiffs contend that the findings of fact with reference to the delivery of the deed are insufficient to support the judgment. In substance, the findings declare that (1) the joint tenancy deed from Kessler to decedent and defendant is absolute in form; (2) that it was regularly signed, acknowledged and delivered; (3) that full legal title of the property was regularly, properly and

absolutely conveyed to decedent and defendant in joint tenancy; (4) that all claims set forth by plaintiffs to the whole or any part of lot 1 in their pleadings are untrue. While such findings are not ideally drawn, yet, in view of certain allegations of the complaint bearing upon the paramount issue, we must hold that the findings and decision meet with the traditional, legal requirements. ■ The allegation at first is that as a result of conversations decedent had with defendant prior to June 8, 1933, defendant promised to hold the property in trust to be distributed as directed by decedent's will. But that statement is followed by the allegation that defendant did not know of the actual existence of the joint tenancy deed until May, 1936. In the first instance plaintiffs allege that the deed was never delivered to defendant. This is followed by the controlling declaration that defendant's acceptance of the joint tenancy deed was made solely with the purpose of dividing the property among decedent's devisees and that in creating the joint tenancy, decedent did so believing that defendant would so distribute the property. While they allege that defendant paid no consideration for the deed, the entire complaint discloses that he was her brother and that she voluntarily made him a gift of the joint interest in the property. The foregoing allegations favorable to defendant render innocuous the allegations that defendant made a promise to decedent and that the good lady created the joint tenancy under a mistaken confidence that defendant would dispose of the property according to her will. And, finally, the complaint alleges the publishing of her *Will* by decedent nearly three years after defendant's alleged promise. There is no allegation that defendant by a fraudulent statement induced the execution of the joint tenancy deed, or that he made the alleged promises for the purpose of deceiving decedent or without any intention of performing them. Plaintiffs' contention is that a promise should have been inferred from conversations, the contents of which are unknown. In view of the allegations of decedent's preparation of the deed with the advice of Upton and in the absence of defendant the complaint fails in not alleging some act of defendant which prevented decedent from executing a contemporaneous writing directing defendant as trustee how to distribute the property. There is no allegation that the language of the will or of the codicil was known to defendant at any time. ■ In order for it to constitute evidence of an agree-

ment that defendant should hold the property in trust, he must, at least, have had knowledge of the language of the will at some time prior to the passing of decedent. No such knowledge is alleged.

The finding that the deed is absolute in form expresses substantially the fact which would have been found by incorporating the deed itself within the findings. The fact that it was acknowledged is itself pleaded by plaintiffs. The finding that it was "delivered," while ordinarily a legal conclusion, in view of the pleadings of the plaintiffs, there can be no doubt as to the exact occurrence at the time the deed was acknowledged by Miss Kessler and delivered by decedent to Mr. Upton. The finding that all claims of the plaintiffs are untrue, may, in view of the pleadings of the plaintiffs, be considered as tantamount to a statement that the allegations of the complaint adverse to defendant's contentions are untrue. Therefore, while in our view of the pleadings findings were unnecessary, yet, such as they are, they disclose the determination of the court upon the controverted issue.

It is not the office of findings to set forth the evidence, but, only the ultimate fact (*Jones* v. *Block*, 30 Cal. 227), and where facts are found which necessarily defeat the losing party all other issues thereby become immaterial. (*White* v. *Hayward*, 33 Cal.App. 550, 553 [165 P. 972]; *Phillips* v. *Stark*, 65 Cal.App. 136, 140 [223 P. 443].) Inasmuch as the complaint alleges the execution and recordation of the joint tenancy deed we may deem the language that it "is absolute in form" to be the equivalent of a finding that it was drawn according to the statutory form for a grant deed.

But one other assignment need be considered, namely, the non-delivery of the joint tenancy deed. In order to effect the delivery of a deed of conveyance to the grantee it is not necessary under all circumstances to pass the instrument of conveyance over to the grantee. Whether a deed was delivered is a question of intent which may be inferred from words spoken or acts done or both. (*Moore* v. *Trott*, 162 Cal. 268, 274 [122 P. 462].) The Trott case holds that the delivery is sufficient if it may be inferred from the circumstances that the grantor intended irrevocably to vest title thereby in another. There may be a constructive delivery as well as an actual delivery so long as acts are shown to indicate the intention of the grantor to vest title by the instrument. (*Kelsa* v. *Graves,* 64 Kan. 777 [68 P. 607].) De-

livery of a deed is accomplished when the conduct of the grantor manifests a present intention to divest himself of the title conveyed. (*Kenniff* v. *Caulfield*, 140 Cal. 34, 40 [73 P. 803].) Such is the situation presented by the acts of decedent. She caused to be signed and acknowledged the joint tenancy deed on June 8, 1933. She delivered the instrument to an agent for recordation in order to vest the title in herself and her brother. Her beneficence was the result of a normal impulse. It was her voluntary act. ▇ No consideration was necessary to support the transfer. It vested the title in decedent jointly with her brother vesting in him the right of survivorship to the entire property upon her decease. Such, indeed, was the result when the sister passed away. (*Smith* v. *Lombard*, 201 Cal. 518 [258 P. 55].) As such sole and absolute owner defendant could not be deprived of his property by "inferences" of an oral promise to his benefactor.

▇ Decedent's intention to effect the joint tenancy is established by the pleadings as well as by the testimony. She engaged the assistance of Miss Kessler to achieve such purpose. She instructed the notary to have both her deed to her friend as well as the joint tenancy deed recorded. With the title thus vested jointly in herself and her brother she placed the deeds in her safety box to await her final call. Plaintiffs make no serious contention of the delivery for they pleaded it and they proved it. Delivery to herself by her own act of recording was in effect a delivery to defendant. (*Smith* v. *Lombard, supra.*) Therefore, the joint tenancy deed vested title in defendant since a delivery cannot be conditional (Civ. Code, 1056). Its recordation stripped it of any condition that might have been suggested at any previous time. (Ibid.) Surely, it could not be subordinated to conditions by a subsequent act or declaration of either defendant or decedent.

▇ A formal acceptance of the instrument by defendant was not necessary to his investment with title. The acceptance of a valuable property as a gift from a sister, effective at once as to a moiety and effective as to its entirety upon her decease, will be presumed in the absence of evidence to the contrary. Not only was there no indication of a rejection of the conveyance by defendant, but on the contrary it is pleaded, proved and contended by plaintiffs that he did accept it. They attempt to avoid such acceptance by their argument

that he accepted it for the purpose of distributing it in the manner described in a will made three years after he became a joint tenant. Such conditions as plaintiffs would attach to the joint tenancy deed are ascribed to a conversation in which, it is said, the conditions were named. It is a fundamental that parol utterances cannot be invoked to vary the terms of a writing. If the deed was ''delivered,'' as was clearly intended by its author, neither her alleged oral declarations nor those of defendant can be used to create a different contract. (*Hall* v. *Ferguson*, 8 Cal.App.2d 444 [47 P. 2d 1073].)

The judgment is affirmed.

Wood (W. J.), J., and McComb, J., concurred.