[Civ. No. 14513. Second Dist., Div. Three. Feb. 16, 1945.]

Estate of MARTHA DEAN, Deceased. VIRGINIA H. LINDSAY, as Executrix, etc., Respondent, v. DR. LLOYD E. DEAN, as Executor, etc., Appellant.

Sherman & Sherman and Glenn M. Still for Appellant.

Lane & Lane, A. W. Lane and M. E. Lane for Respondent.

WOOD (Parker), J.—This is an appeal from a judgment that appellant was not the owner of the contents of a safe deposit box, which he alleged he owned by reason of a joint tenancy agreement with the decedent.

Lloyd E. Dean, the appellant, and Martha Dean, the decedent, were married in 1923. In 1931 Mrs. Dean rented a safe deposit box in a bank, and the ''signature card,'' purporting to state that the box was held in joint tenancy, was signed by Mrs. Dean and her sister, Virginia H. Lindsay, who resided in the State of New York. Separate property of Mrs. Dean which included stocks, bonds, promissory notes, and jewelry, was placed in the box. In 1933 that box was surrendered, and another box in the same bank was rented by Mrs. Dean. Another signature card, purporting to state that the box was held in joint tenancy, was signed by her and her sister, and the property was trans-

ferred to the new box. Mrs. Dean went to a hospital for medical treatment a few days before January 19, 1942, and her physician told her that she could not get well. On January 19, 1942, she desired to see some of the things that were in the box, but being very ill she could not go to the bank, and her sister, who had joint access to the box, had not arrived from New York. On that day, January 19th, she requested appellant to bring certain things from the box to her, and she signed a letter, written by appellant and addressed to the bank, which stated: "I hereby authorize you and request that you turn over to my husband Dr. L. E. Dean the long brown envelope marked 'F. H. A.' containing Fidelity Building & Loan book and other papers, and any or all other contents as requested." He presented the letter to the bank on that day, and the bank told him that it could not comply with the request "in that way," that "they had certain forms, certain ways of doing things, and it would probably have to be done that way." The bank gave him a card and said further "if she wanted to have it transferred, or have it put in joint tenancy, then I [he] could enter the box." He then returned to the hospital and told Mrs. Dean that the bank "could not grant her request in that letter, in that way," that if "she wanted to make a joint tenancy card, I [he] could enter the box and get whatever I [he] wanted to, or whatever she wanted, out of it." She and appellant then, on January 19, 1942, signed the card which he had brought from the bank, and he thereupon delivered it to the bank and opened the box and took the Federal Savings & Loan pass book to her. He had never been authorized to open that box before that time. That card signed by them was in substance as follows:

"Joint Tenants (One signature required—Right of Survivorship)

Bank of America National Trust and Savings Association

Date — 1 — 19— 1942

Safe Deposit Box No. 2758

"Subject to the conditions and regulations printed on the back of the receipt for rent of above numbered safe deposit box . . . the undersigned jointly and severally hereby further *agree* with said bank and with each other *as follows:*

"(1) That right of access to said box and the contents thereof and to remove all or any part of said contents and/or

surrender of said box shall be had by either of us without consent of or notice to the other of us . . . ;

"(2) That in the event of the death of any person entitled at any time to access of said box, the survivor(s) will notify said bank at once . . . and, in the absence of such notice, the bank shall be entitled . . . to act as if such decedent were alive; further, that *the survivor(s) will and shall for every purpose be the sole renter(s) of said box, with the exclusive right of access thereto and possession of the contents thereof;*

"(3) That we will indemnify the bank against all loss and liability . . . by reason of its reliance upon any of the conditions . . . contained herein . . . including the bank's permitting access to said box . . . after the death of any person entitled to access . . .;

"(4) That we will hold you free from any claim on the part of either of us because of any use or disposition at any time by either . . . of us of any of the contents of said . . . box;

"(5) That the bank is authorized to charge the rent . . .

"(6) That this agreement and the conditions . . . on said receipt . . . are binding on our respective heirs. . . .

"We hereby acknowledge delivery to us of the aforesaid receipt for rent and of two keys to said box.

"Witness: R. McComb      MRS. MARTHA DEAN  
                         DR. L. E. DEAN."

(Italics added.)

On January 20th she signed another letter to the bank, written by appellant, which stated: "I hereby request and authorize you to transfer my safety deposit box number 2758 from my name and that of my sister, Mrs. J. D. Lindsay, to that of the bearer of this note—my husband, Dr. L. E. Dean." He then presented that letter to the bank, and on that day, January 20th, an "individual" signature card was signed by him, and the safe deposit box was transferred to the name of appellant only. Thereafter and until the death of Mrs. Dean on January 30, 1942, appellant opened the box on four different days at the request of Mrs. Dean, and took therefrom and delivered to her the jewelry, certain bonds, and a note for $800 payable to Mrs. Dean which had been signed by her sister, Mrs. Lindsay. Mrs. Dean gave the jewelry and the note to her sister, and told appellant to return the bonds to the box, except one bond which she thought should be sold, and as to that one she told him to keep it "in his possession."

When she gave the note to her sister, Mrs. Dean signed on the back of it under writing placed thereon by appellant "transferring it into the name" of her sister, and then "handed" the note to her.

Appellant and Mrs. Lindsay were appointed executor and executrix, respectively, of Mrs. Dean's will. Both of them signed and swore to the inventory of the estate on April 7, 1942, which included the contents of the safe deposit box. On May 13, 1942, in a petition for authority to exchange securities they listed, as property of the estate, the securities which had been in the safe deposit box. Mrs. Lindsay, as executrix, filed a first account current and petition for fees on June 9, 1943. On June 25, 1943, appellant filed objections to the account, and alleged that the contents of the safe deposit box, listed in the inventory as assets of the estate of the approximate value of $12,000, were his sole and separate property ever since Mrs. Dean transferred the safe deposit box to the names of herself and appellant as alleged joint tenants. He alleged further that through inadvertence and misunderstanding he joined in listing the contents of the box in the inventory.

The court found that the property listed in the inventory was the separate property of decedent and that none of it was owned by appellant; that decedent did not transfer the contents of the safe deposit box to herself and appellant as joint tenants; that said transfer was for the purpose of convenience only of decedent while she was in the hospital and that said box and contents were transferred to the possession of appellant as agent only and for the benefit of decedent; and that the listing of said contents in the inventory was not through inadvertence or misunderstanding of appellant.

Appellant contends that the signature card signed by him and decedent discloses there could be only one "true intention in the minds of the parties in signing such a card and that is that it is intended to create a joint tenancy in said box and its contents with the right of survivorship." ▮ A joint tenancy interest must be created in accordance with the provisions of section 683 of the Civil Code, except that a joint tenancy in a bank deposit may be created also under the provisions of the Bank Act. (Stats. 1909, p. 87 as amended; Deering's Gen. Laws, Act 652.) A bank deposit is not involved herein. Said section 683 provides: "A joint interest is one owned by two or more persons in equal shares, by a title created by a single . . . transfer, *when expressly declared in the*

*... transfer to be a joint tenancy,* or by transfer from a sole owner to himself and others *... when expressly declared in the transfer to be a joint tenancy. ..."* (Italics added.) Section 686 of the Civil Code provides: "Every interest created in favor of several persons in their own right is an interest in common, unless acquired by them in partnership ... or *unless declared in its creation to be a joint interest, as provided in section six hundred and eighty-three,* or unless acquired as community property." (Italics added.) In *Dalton* v. *Keers* (1931), 213 Cal. 204 [2 P.2d 355], wherein the question was whether real property was held in joint tenancy, the court said at page 207: "It is clear that the contract now under consideration did not create a joint tenancy. ... This is true, not because of the use of the disjunctive, but by reason of the fact that *the instrument itself did not so declare."* (Italics added.) It was said further therein at page 208: "In any event the interest, if any, which the purchasers acquired under the contract of purchase was not a joint tenancy, under the express language of sections 683 and 686 of the Civil Code. ..."

A question therefore arises as to whether it was expressly declared on the signature card, above set forth and under which appellant asserts ownership, that the property was to be held in joint tenancy. The words "Joint Tenants" appear at the top of the card as a caption. Below the caption, that is, in the body of the writing on the card wherein the signers recite that they agree "as follows" to certain specific matters, the words "joint tenants" or "joint tenancy" were not used, and no express declaration was made in the body of the writing that the title to the property was to be held jointly or in any manner, or that the survivor should be the owner of the property. There is a declaration, however, in the body of the writing that the survivor shall be the sole renter of the box "with the exclusive right of access thereto and possession of the contents thereof." ▮ Appellant's contention that said last mentioned provision shows the intention to establish ownership cannot be sustained. That provision relates to the status of the survivor in connection with the rental of and access to the box and to his status in regard to possession of the contents. Neither the word "title" nor the word "ownership" is used in that provision or used at all on the card. Said provision is a part of a paragraph of the writing which relates to absolving the bank from liability for the acts of the

survivor in removing property from the box, and since the right of access to the box and to possession of the contents by the survivor would afford such protection to the bank, it was not necessary, insofar as the bank was concerned, to include in the printed form a provision as to the title to or the ownership of the contents of the box. It appears from the whole context of that paragraph that the provision concerning access to the box and possession of its contents was made for the protection of the bank and was not intended to be, and was not, a declaration as to title or ownership of the contents of the box. The body of the writing therefore did not expressly declare that the contents of the box should be held in joint tenancy. (The rent receipt referred to on the card was not offered or received in evidence.)

At the top of the card, preceding the portion of the printed form which has been referred to herein as the body of the writing, the words "Joint Tenants," in capital letters 1/16 of an inch in height, appear as a caption or headline. In parentheses in the same line with those words are the following words: "One signature required—Right of survivorship." That caption and those words in parentheses did not amount to an express declaration that the contents of the box were to be held in joint tenancy. It cannot be determined from the caption and those words in parentheses what, if anything, was to be held in joint tenancy.

It therefore appears that the caption and the body of the writing are inconsistent with each other. The caption refers in general language to a joint tenancy, whereas, the body of the writing, which is a specific statement of the agreement, does not mention a joint tenancy at all. Considering the caption and the body of the writing together and as a whole, as appellant asserts should be done in order to ascertain the "true intention in the minds of the parties," it appears that it was not expressly declared on the signature card that the property in the box was to be held in joint tenancy; and it appears further that the writing was uncertain and ambiguous as to whether it was the intention of the parties to create a joint tenancy in the ownership of the contents of the box or to become corenters with the right of joint access to the box and to possession of the contents.

In the case of *Security-First Nat. Bank* v. *Stack* (1939), 32 Cal.App.2d 586 [90 P.2d 337], which involved the ownership of the contents of a safe deposit box under an alleged

joint tenancy, the material provision in the body of the signature card therein is identical with a provision on the card herein. That provision was (p. 591): " 'Upon the death of either of us, the survivor is and shall for every purpose be the sole renter of said box, with the exclusive right of access thereto and possession of the contents thereof.' " The appellant therein contended that the provision created a joint tenancy in the contents of the box. The court said (p. 591): "Such contention may be disposed of briefly with the observation that by the terms of the rental agreement the survivor acquired merely access to the box and possession of the contents. The title to the contents manifestly cannot be effected by such phraseology, under the circumstances here presented." It should be noted further that the caption of that card, as shown by the reporter's transcript therein (p. 176), conformed with the subject matter of that provision, in that the caption was: "Co-renters Agreement (survivor to have exclusive right of access)." Under the interpretation of that provision in the Stack case, *supra,* regarding access to the box, which provision is identical with the provision on the card herein regarding access to the box, it appears that the caption on the card herein, "Joint Tenants," etc., does not conform with the subject matter in the body of the card herein.

Appellant relies upon the *Estate of Gaines* (1940), 15 Cal.2d 255 [100 P.2d 1055] wherein it was held that the property in a safe deposit box was held in joint tenancy. That case is distinguishable from the present case, in that the signature card therein was not uncertain or ambiguous. The court said at page 260: "The joint tenancy cards signed by the parties with reference to both the safe deposit box and the bank accounts would, *standing alone,* be sufficient to create joint tenancies, that is, joint interest with right of survivorship to the whole." (Italics added.) In that case the signature card, as shown by the clerk's transcript therein (p. 70), was in part as follows: "We, the undersigned joint renters of box number 165 in the Safe Deposit Department . . . hereby agree each with the other . . . we have rented said box as *joint tenants with right of survivorship,* and that *all property contained therein* and which hereafter may be placed therein during our tenancy, *is and shall be the property of us,* the undersigned, as such *joint tenants,* with full rights of possession to the survivor(s) in case of death of

either of us . . . and the surviving *joint tenant* . . . shall not remove any of the contents . . . until said bank is authorized to permit such removal, in accordance with law." (Italics added.) On the signature card in that case it was expressly declared, in strict compliance with section 683 of the Civil Code, that the property in the box should be owned by the parties in joint tenancy. ▉ In the present case the signature card, "standing alone," was not sufficient to create a joint tenancy, but was uncertain and ambiguous.

The case of *Young* v. *Young* (1932), 126 Cal.App 306 [14 P.2d 580], cited by appellant, which involved the ownership of the contents of a safe deposit box, is also distinguishable from the present case. The card therein recited: " 'We hereby declare that all the *contents of said safe* now or hereafter placed therein, *are our joint property* and that *the title and right of ownership* thereto and to the whole thereof rests in the survivor of us as his or her separate property.' " (Italics added.) The intention to create a joint interest in the contents was declared in that instrument, and no uncertainty was involved therein.

The three witnesses at the trial were called by appellant. No witnesses were called by respondent. Oral and documentary evidence was received on cross-examination, over the objection of appellant, concerning the circumstances under which the signature card of January 19th was made. In addition to the evidence specifically mentioned above there was other evidence relating to the intention of decedent. On January 19th decedent wrote and signed a letter, as follows, addressed to the bank but not delivered: "Will you please let my husband Dr. L. E. Dean have the contents of my Safety Deposit box #2758 *So I can inspect same.*" (Italics added.) On that day she wrote and signed a letter, as follows, addressed to a securities broker but not delivered: "Will you please have these securities that I am sending over re-registered in my sister's name, Mrs. J. D. Lindsay, Burt, N. Y." At that time all securities of decedent were in the safe deposit box. An unpaid promissory note in the sum of $6,050, made by appellant in 1932 and payable within 6 months to decedent, was in the box. Appellant testified that on January 19th, in response to an inquiry by appellant as to what she wanted to do with that note, she told him "to destroy" the note (and he did destroy it). It appears, however, that she did not have the note brought to her and did not "hand" it to him or write

thereon "transferring it into" his name, in accordance with the procedure she had followed when she gave the $800 note to her sister. She did not give him any of the property which he brought to her from the box. He testified that he "understood that she wanted it [the things from the box which he brought to her] for the purpose of turning over for distribution to her relatives, her nieces and her sisters." The Federal Savings and Loan deposit which had been in the names of appellant and decedent as joint tenants was, according to appellant's testimony, transferred to his name in order that he might pay her funeral expenses. He testified that in July, 1941, when she had a serious surgical operation, she changed her personal checking account into a joint tenancy account and from that account he paid only hospital and doctor bills. He testified that when he told her what the bank's requirement was, as above stated, relative to authorizing him to open the box, that she "just indicated that she would do it [sign the card], or was willing," but he did not "recall that she made any specific remark." A lady, who had been a friend of decedent and appellant for many years, testified that she visited decedent at the hospital on several occasions; that decedent said, " 'I have not a joint account with the doctor [appellant]' ' "; that the witness said to decedent, " 'That will help out, if you want to do anything with the money, because with the joint account he would be tied up, like I was with my mother' "; that the witness said further to the decedent, " 'If you have anything you want the doctor to attend to, put it in his name now' "; that on another occasion decedent said, " 'I want to talk things over. I have talked to the doctor.' "—" 'You know, I think he has got a good idea about that joint account, and I am going to have it attended to ' "; that on another occasion decedent said, " 'I have settled that. Lloyd [appellant] has everything straightened out,' " and the witness said, " 'About the features of the joint account?' " and decedent said, " 'Yes, I fixed it. I turned that safety deposit box over to him' "; that on another occasion when she asked decedent if she had everything fixed the decedent said, " 'Yes, I will have everything put in Lloyd's name, so he can handle everything. . . . I am putting everything in the doctor's hands so he can take care of them.' "

It is conceded by appellant that until January 19, 1942,

the property in the box which appellant is claiming was the separate property of Mrs. Dean. The evidence shows that during a period of more than 10 years preceding January 19, 1942, she did not allow appellant to have access to her safe deposit box; that when she knew she could not get well she wanted to inspect certain things which were in the box, and wanted some of them for the purpose of giving them to her sisters and nieces; that since her sister, who had joint access to the box was not available, it was necessary in order to obtain the things from the box that she authorize some other person to obtain the things for her; that when her proposed method of authorization, i.e., by letter to the bank, was rejected by the bank, she signed "without any specific remark" the printed card which appellant told her would authorize him to "enter the box and get whatever" she wanted; that in the letter of January 20th wherein she asked the bank to transfer "my" box from "my name and that of my sister" to appellant she did not recognize or regard the card which was signed on the preceding day as a joint tenancy agreement; that on and after January 19th she continued to regard the contents of the box as her separate property, in that she directed appellant on five different days to bring things from the box to her, and she gave some of them to her relatives, directed that some of them be returned to the box, and directed that a bond (which she thought should be sold) be kept "in his possession"; and that appellant did not recognize or regard the card of January 19th as a joint tenancy agreement and on the contrary treated it as her separate property, in that he listed the property in the inventory of the estate about two months after her death, and listed it as property of the estate in a petition to exchange securities filed about three months after her death. He did not assert a claim of ownership of the property until approximately 17 months after her death. In her will she gave the $6,050 note, made by appellant, to her relatives.

Appellant asserts that the court did not admit the parol evidence or admit the exhibits in evidence for the purpose of explaining the provisions of the card, but that such evidence was admitted "under the mistaken impression that the evidence went to the weight of the testimony as a whole." When the letter to the bank, which was not delivered, and the letter to the securities broker, which was not delivered, were

offered in evidence, appellant objected and the court said that they would show her intent whether they were delivered or not, and that the objections go to the weight of the evidence rather than to its admissibility. It appears, contrary to appellant's contention, that the court received parol evidence, and received documentary evidence in addition to the signature card of January 19th, for the purpose of considering it in determining the intention of the decedent in signing the card. ▉ The card, being uncertain and ambiguous, such evidence was received properly. ▉ The evidence was sufficient to support the findings of the court.

In 32 California Law Review 301, under the topic, "The Unintentional Creation of a Joint Tenancy in the Contents of a Safe Deposit Box," cases from various jurisdictions relating to the question herein are cited.

It is of interest to note that the appellant herein was the appellant also in the *Estate of Dean*, 62 Cal.App.2d 418 [144 P.2d 849], wherein he had contested a petition to probate an alleged lost or destroyed will of decedent. The trial court therein found that the original will was lost or fraudulently destroyed by the contestant, and the court admitted a copy of the will to probate. The judgment therein was affirmed. The opinion states (p. 423) that on January 27, 1942 (which was eight days after the signature card herein had been signed) Dr. Dean prepared a will for decedent, allegedly at her request, which provided in part that she appointed him and Mrs. Lindsay "to administer all my affairs from now on . . . and *in accordance with my directions and their knowledge of my wishes as already expressed or as may yet be expressed, to distribute* all *my* remaining worldly goods." That document indicates that appellant herein had been instructed by decedent as to the distribution of her property, and that it was not her intention to enter into a joint tenancy agreement with him when she signed the card. It is also of interest to note further that appellant herein did not assert a claim of ownership of the contents of the box until he had lost his contest of her will in the trial court.

Another contention of appellant is that if the property did not become his property by reason of a joint tenancy agreement, then it became his property by gift on January 20th when the box was transferred to his name by himself upon the written request of decedent. ▉ Whether it was dece-

dent's intention to make a gift of the property to him was a question of fact for the trial court. The acts of decedent after January 20th in giving certain parts of the property to other persons were inconsistent with the theory of a gift of all the property to appellant on January 20th. The evidence was sufficient to support the findings to the effect that the property was not given to appellant.

The finding of the trial court that the listing of the contents of the box in the inventory was not through inadvertence or misunderstanding is supported by the evidence.

The judgment is affirmed.

Desmond, P. J., and Shinn, J., concurred.

A petition for a rehearing was denied March 13, 1945, and appellant's petition for a hearing by the Supreme Court was denied April 16, 1945.