[Civ. No. 17640.   First Dist., Div. One.   Apr. 9, 1958.]

OAKLAND BANK OF COMMERCE (a California Banking Corporation), as Executor, etc., Appellant, v. ELEANOR JANE HAYES, Respondent.

Wallace B. Colthurst and Orlando J. Bowman for Appellant.

Hagar, Crosby & Rosson and Paul L. May for Respondent.

BRAY, J.—Plaintiff appeals from an adverse judgment in an action brought (1) to quiet title; (2) to declare void for nondelivery the four deeds hereafter mentioned.

### QUESTIONS PRESENTED

1. Was there evidence of delivery of the joint tenancy deed?

2. Are the findings sufficient?

EVIDENCE*

Plaintiff and his wife Mary Eleanor Moffett (the wife died subsequently to the signing of the deeds and prior to the institution of this action), at the time of the making of the deeds hereafter mentioned, held certain Oakland property in joint tenancy.

The four deeds in question are: 1. Joint tenancy deed dated October 12, 1950, acknowledged the same date before a notary public, and recorded October 13, in which plaintiff and his wife are grantors, and plaintiff, his wife and defendant daughter are grantees. It was "Recorded at Request of Grantee" and was to be returned to Mr. and Mrs. John J. Moffett. 2. Deed of gift dated and acknowledged October 14, wherein plaintiff is grantor and his wife and defendant are grantees. 3. Deed of gift dated and acknowledged October 14, wherein defendant is grantor and plaintiff and his wife are grantees. 4. Deed of gift dated and acknowledged October 14, wherein Mrs. Moffett is grantor and plaintiff and defendant are grantees. All deeds are of the property which plaintiff and wife held in joint tenancy. None of the three deeds of gift was recorded in Mrs. Moffett's lifetime, but two days after her death plaintiff recorded deed Number 4 (Mrs. Moffett as grantor, plaintiff and defendant as grantees) with directions that it be returned to him.

Plaintiff testified that at 6:30 p.m. on October 12, 1950, at their home, his wife told him that she had consulted an attorney about their property and had been advised that the three members of the family should make deeds of gift to each other to save making wills. He stated that as the property was already in joint tenancy the survivor would get it. The wife replied that under her plan, if he and she died at the same time, the defendant would get the property without having to go to court; that she had had the papers drawn and that after signing they would be kept in the safe deposit box, being of no value until recorded. His wife presented two deeds to him and requested that he sign. The deed of gift from him to his wife and the defendant was on top. After signing it, his wife twisted it up and he signed another deed which he thought was also a deed of gift. He did not see or read the joint tenancy deed until after his wife's death.

*Subsequent to judgment plaintiff John James Moffett died, and the Oakland Bank of Commerce as executor was substituted for him. Plaintiff, as used herein, refers to Moffett.

At no time did he authorize his wife to record the joint tenancy deed. His only intention was to convey title if he and his wife died at the same time. He understood that title would not pass unless the deed was recorded.

The day after his wife's death he found in their joint tenancy safe deposit box an envelope. On the face of it was written in his wife's handwriting "Deeds of Gift from us, to be recorded in the event of the death of either of us. Record the Deed of Gift of the decedent only." In the envelope were the four deeds above mentioned. He took the deed of gift from his wife to him and defendant, and recorded it. At no time after the joint tenancy deed was signed until after Mrs. Moffett's death did defendant claim any ownership in the property, nor pay any of its taxes, insurance or improvements. He first discovered that the property was in defendant's name when an attorney told him so in the presence of defendant. Plaintiff stated that was ridiculous and requested defendant to make a deed of gift to him. She said nothing but the attorney refused for her. Plaintiff found in his wife's personal records after her death a $10 check to the notary public* dated October 13, 1950, and a receipt from the recorder of the same date.

Defendant testified that the subject of the property was discussed at dinner time on October 12, 1950. Her mother, in the father's presence, said that the three of them were to be on the deed so that if anything happened to one the interest would be vested in the others. Her mother told defendant that she would have to make out a deed and that the parents were also making out deeds. The property was to be put in the three names and the deeds of gift would be put into the safe deposit box. After dinner her father called to her and requested her to sign the deed as he wanted to go bowling. She had intended to sign it later. She went into her parents' bedroom and signed the deed of gift on the dresser. Both parents were present. On the dresser the other three deeds were laid out so as to allow the ink to dry. Hers was the last one signed. She did not see her father sign and does not know when he did. At that time there was no discussion other than that her father told her to sign the deed of gift, so that her mother could record the joint tenancy deed the next day and put the other three in the safe deposit box. The understanding was that only the joint tenancy deed was to be

*Plaintiff testified that he never saw the notary public who acknowledged the deeds. Defendant testified that she could not recall having seen him.

recorded. Plaintiff denied defendant's version of the evening's happenings. Defendant could not remember any specific other time wherein she discussed the title with her father but discussed it with her mother on other occasions. One was when her mother said that she had put some stock in the three names and that the real property was in the three names. Defendant testified that when the attorney told plaintiff that she and he owned the property plaintiff did not express any surprise.

Plaintiff's sister-in-law, Irene Moffett, testified that in January, 1954, defendant told her that she had not known that the property was in her name and that she was going to make it tough for plaintiff since he recorded the gift deed. Defendant denied this. Also in 1952 defendant asked Irene's husband's advice as to whether she should loan money to her parents for the purchase of a new home. Upon being told that it was not a good idea, defendant stated that she had everything fixed so that she would be taken care of and that her parents would not be able to do anything without her knowledge.

Plaintiff's brother, William, testified that he requested defendant to return the property to her father and that she said she would after she got everything belonging to her out of the house. In another conversation defendant said she knew the property belonged to her father, that she never put anything into it, and would give it back when she got everything she wanted out of it. At that time defendant had some personal property in the home.

Defendant admitted that she told William that she was going to give the property to her father when she got her things out of it, and that she had paid nothing into the property, but she testified that she had further stated that her name was on the deed. As to the conversation in regard to loaning money to her parents, she explained that she meant that if her name was on the present house and would be on the next one, she would like to contribute some money if it were needed for the new house.

The court found that Mrs. Moffett did not make the representations which plaintiff claimed that she made and further found that by reason of said joint tenancy deed plaintiff, his wife and defendant became and are the owners of the real property involved; that there was a valid delivery of the joint tenancy deed and no valid delivery of any of the three deeds of gift and that each of said three deeds are null and void.

It then quieted title by virtue of the joint tenancy deed in plaintiff, his wife and defendant.

### 1. *The Joint Tenancy Deed Was Delivered.*

There is a direct conflict between the testimony of plaintiff and that of defendant as to the circumstances under which plaintiff signed the deeds. This conflict the trial court resolved in favor of defendant. Defendant's testimony, if believed (and it was believed by the trial court), amply supports the finding of delivery. Her testimony shows that the three parties understood, at the time of the signing of the deeds, that the joint tenancy deed was to be recorded by the mother, for the purpose of getting title in all three in joint tenancy. There is no evidence of manual delivery, in the strict sense of the grantors' handing the deed to themselves and defendant as grantees. A lack of such manual delivery is not fatal to a delivery. It was said in *Moore* v. *Trott* (1912), 162 Cal. 268, 274 [122 P. 462]: "It has long, if not always, been the rule that the delivery of an instrument is a question of intent, and that to a complete delivery no precise form of words and no particular character of act is necessary. The delivery is sufficient and complete if from any or all of the circumstances the grantor has made known his intention irrevocably to part with his dominion and control over the instrument, to the end that it may presently vest title in another. 'The delivery,' says Touchstone 'is either actual, i.e. by doing something and saying nothing; or else, verbal, i.e. by saying something and doing nothing, or it may be both; and either of these may make a good delivery and a perfect deed.' "

The evidence shows a clear distinction between the intent of the parties as to the passing of title under the joint tenancy deed and under the three deeds of gift. The latter were only to take effect upon death of one of the parties. Plaintiff contends that it was the intention that the deed of gift from defendant to plaintiff and wife was to pass immediate title to the grantees. However, his own testimony, as well as that of defendant, refutes such contention. Nor does the fact that the joint tenancy deed after recordation was returned to plaintiff and his wife and kept thereafter in their safe deposit box necessarily refute an intention to pass title under that deed immediately. Plaintiff and his wife as well as defendant were grantees therein. The fact that they were also grantors does not negative the inference of delivery. The deed was recorded at the request of "grantees"

and a logical place for the deed to be kept was in the safe deposit box which was in the names of the father and mother.

*Marshall* v. *Marshall*, 140 Cal.App.2d 475 [295 P.2d 131], cited by plaintiff, answers some of plaintiff's contentions. There a grandmother signed a grant deed conveying property to her five granddaughters, reserving a life estate in herself. She instructed her attorney to record it but did not tell the grantees of its execution. After recordation the deed was returned to her attorney, who, later, at the grandmother's request, returned it to her. She stated to her attorney and her son that she wanted the grandchildren to have the property and wanted to avoid the trouble and expense of probate. Two of the grandchildren "learned of the execution and recordation of the deed but neither rejected the grant made to them by it." (P. 477.) The court held that the foregoing circumstances substantially supported the finding of delivery, saying that "the plaintiff had by words manifested her intent to vest title in the grantees and had directed the recording of the instrument . . ." (p. 479) and that "At least two of the grantees learned of the grant prior to the time plaintiff sought to revoke it and did not reject the gift made by it. This constituted acceptance by them, and as the grant was beneficial to all the grantees, the acceptance by the other three may be presumed." (P. 479.)

Plaintiff cites a number of cases in which it was held that under the particular circumstances of the respective case no delivery of a deed took place. (For example, *Stone* v. *Walsworth* (1953), 115 Cal.App.2d 369 [252 P.2d 39], deed from parents to daughter.) They all uphold the principle that to constitute a valid, effective delivery, it must be shown that the grantor intended to divest himself of title, that the deed should become presently operative as such, and should presently pass title. The difference between those cases and the instant one is that there the evidence failed to show the requisite intention of the particular grantor while here it showed the intention of the grantors that title presently pass under the joint tenancy deed.

■ Plaintiff contends that as all the deeds were signed the same day, they must be construed together. The evidence shows that the joint tenancy deed was delivered unconditionally, the other three conditionally. Plaintiff takes a rather inconsistent position. In his complaint he alleged that all three deeds were void for nondelivery and requested that they be cancelled. At the trial he contended that they were

void for the same reason. The court so found. He now contends that the deed from defendant to himself and wife was a valid one conveying presently any interest defendant might have received from the joint tenancy deed. If this were so, then the deed from himself and wife to defendant and the one from the wife to defendant and plaintiff were valid ones and likewise conveyed present titles. However, plaintiff on appeal may not reverse the position he took in his complaint and throughout the trial in the lower court. (See 4 Cal.Jur. 2d 420, and cases cited.)

2. *Findings.*

■ Plaintiff contends that finding IX is inconsistent with finding I. The latter relates to the means by which plaintiff and his wife originally acquired the property in joint tenancy. Finding IX, following findings concerning the execution of the joint tenancy deed from plaintiff and wife to plaintiff, his wife and defendant, finds that by said last mentioned deed all three became the owners in joint tenancy of the property. There is no inconsistency in these findings.

■ Plaintiff contends that the finding in finding IV that the joint tenancy deed was executed and delivered to the grantees named in it is a mere conclusion of law and does not find that the grantors intended to convey a present interest. Taking the findings as a whole, including the finding that the present ownership of the property is evidenced by the joint tenancy deed, that the gift deeds are null and void, that the recorded gift deed should be expunged from the record, and that plaintiff is not entitled to a decree quieting his sole title to the property or adjudging that defendant has no interest therein, the finding of delivery is that of the ultimate fact which includes delivery with intent to vest present title.

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied May 9, 1958.