[Civ. No. 18109. First Dist., Div. One. Mar. 26, 1959.]

EDWIN D. BERL et al., Plaintiffs, v. CLAUDE N. ROSEN-BERG, Individually and as Executor, etc., et al., Appellants; MARION CLEMENS, Respondent.

Francis M. Passalacqua, Golis & Fredericks and Maurice Fredericks for Appellants.

Jack Flinn for Respondent.

PETERS, P. J.—Plaintiffs, partners, are security brokers. One Melville C. Rosenberg, under the terms of a written contract, engaged plaintiffs to act as his broker. In the regular course of business plaintiffs came into possession and held in Melville C. Rosenberg's account certain securities. Melville committed suicide by taking morphine sulphate. With the consent of all concerned plaintiffs sold the securities, deriving $8,003.68 from the sale. The three defendants claimed the fund. Plaintiffs interpleaded the three claimants. The trial

court determined that defendant Marion Clemens was entitled to the money. The other two defendants appeal.

Defendant and appellant Claude N. Rosenberg is the executor of the estate of the decedent. He claims the money as part of the decedent's estate. Defendant and appellant Barbara Andrews is the sister of the decedent. She claims that the will of decedent is invalid, and that the money belongs to her as next of kin. Marion Clemens urges that before his death decedent placed the securities in a joint tenancy account with him, and claims the fund as surviving joint tenant. The trial court found that Marion Clemens was entitled to the fund as surviving joint tenant. The correctness of this holding is the basic point involved on this appeal.

The evidence relied on on the issue was practically stipulated to, and is as follows: Prior to his death decedent wrote two letters to the plaintiffs. They read as follows:

"330 Schroeder St.
Sunnyvale, Cal.
June 12, 1956

"Edwin D. Berl & Sons
333 Montgomery St.
San Francisco

"Dear Sir:

"I wish to make a joint ownership account with Marion Clemens of 72 Natoma St., S.F. for sole survivor to receive all.

"Signed M. Casper Rosenberg
"M. Casper Rosenberg"

"Sunnyvale, Cal.
June 18, 1956

"Edwin D. Berl & Sons
333 Montgomery St.
San Francisco

"Dear Sir:

"Please send your check for $200. to Mrs. Mary Fallis, 325 Schroeder St., Sunnyvale, indicating for lawn care.

"Signed M. Casper Rosenberg"

These two letters were placed in the same envelope and mailed on June 18, 1956. They were delivered to plaintiff's office about 8:30 a.m. on June 19, 1956.

On June 19, 1956, the decedent committed suicide, his body being discovered at about 11 a.m. of that day. On the after-

noon of June 19, 1956, at about 3:30 p.m. plaintiffs, in ignorance of the death of their client, took action on both letters. They wrote to decedent and advised him to fill out a certain form in order to set up the joint tenancy account. At the same time the plaintiffs acted on the second letter by sending the $200 check to Mrs. Fallis, as requested. The basic question presented is whether this evidence supports the holding that a joint tenancy was legally created.

The answer to this question depends upon the application of well settled principles of law to this particular fact situation. Since no consideration passed from Clemens to decedent, the joint tenancy, if it was created, constituted a gift to Clemens of an undivided one-half interest in the property. (*Estate of Lissner*, 27 Cal.App.2d 570 [81 P.2d 448].) Thus, the basic questions are whether the requirements for the creation of a joint tenancy (Civ. Code, § 683) and those for a valid gift (Civ. Code, §§ 1146-1151) are shown by the facts.

Appellants first urge that the purported gift was one in contemplation of death and invalid because the contemplated death was suicide. The parties seem to argue that the requirements of a gift *causa mortis* and one *inter vivos* are fundamentally different. An examination of the law, however, demonstrates that the only basic distinction between the two types of gifts is that a gift *causa mortis* is revocable if the donor lives, while a gift *inter vivos* is not. But other than this, the basic rules applicable to the two types of gifts are the same. In *Beebe* v. *Coffin*, 153 Cal. 174, 177 [94 P. 766], it is stated: "[I]t cannot be too clearly borne in mind that the single vital distinction between a gift *causa mortis* and a gift *inter vivos* is that the former, being in its nature testamentary, is subject to the donor's revocation while he lives. But the essential of delivery, of the immediate surrender of all dominion and control over the subject of the gift, is as absolutely necessary in the one class of gifts as in the other. Falling short of such unconditional delivery, a gift is incomplete. If the transfer of such dominion and control is postponed to some future date, as until the date of the death of the donor, it becomes thereby no more than an unexecuted and unenforceable promise to make a future gift. [Citations.] . . . If, on the other hand, the thing given remains under the control of the donor, or, except in the case of a gift *causa mortis*, is subject to his revocation, his gift is not complete.

*There is no difference, however, in this particular between a gift inter vivos and a gift causa mortis. In either case it is not complete unless there is an actual or symbolical delivery to the donee of the thing to be given.''* (Emphasis added.) (See also *Knight* v. *Tripp*, 121 Cal. 674 [54 P. 267].)

■ But appellants argue that a gift *causa mortis,* where the contemplated death is suicide, is invalid as a matter of public policy. They cite 24 American Jurisprudence 735, section 9, and 28 Corpus Juris 689, section 101, in support of this supposed rule. These texts contain statements to that effect. The cases cited in support of these texts, however, are cases where the suicide did not take place, and the donor was seeking to revoke. Some of these cases contain general language to the effect that a gift in contemplation of suicide is invalid as a matter of public policy. If these statements be interpreted to mean that such a gift will be set aside if the donor does not commit suicide, then these statements are undoubtedly correct. But if they mean that where the donor complies with all the requirements of a gift and then commits suicide that the donee will not be permitted to keep the property, they are clearly wrong. Once the basic requirements for a gift either *inter vivos* or *causa mortis* are complied with, title to the donee passes, and the gift is valid. In the case of a gift *causa mortis,* if the donor lives, the gift is revocable—but only revocable by the donor if he lives. ■ Of course, there is a strong public policy against suicide, but this does not mean that public policy prevents an owner from giving away his property before committing suicide. Carried to its logical conclusion the argument of appellants, if sound, would mean that one contemplating suicide could not only not make a gift, but could not will his property away, or that his heirs could not inherit the property.

Thus, we get back to the question of whether the basic elements of a gift were here shown to exist. ■ The two basic elements are the intention of the donor to make a voluntary transfer to the donee, and a delivery, actual or constructive, by the donor to the donee or to someone on his behalf. (See cases collected 24 Cal.Jur.2d 33, § 18 et seq.) In the present case, the intent to make a gift was demonstrated. This is conceded. The real question is whether there was a delivery.

Under the facts there was not a delivery of the property involved to the donee. The delivery, if any, was of the letter to the plaintiffs who already were in possession of the securities. Did that constitute a symbolic delivery?

■ Of course, in a proper case, delivery, either actual or symbolic, may be made to a third person on behalf of the donee, and if the donor parts with dominion and control, such a gift will be effective. (*Spellacy* v. *Dauterman,* 122 Cal. App. 416 [10 P.2d 114]; *Heitman* v. *Cutting,* 37 Cal.App. 236 [174 P. 675].) ■ But the really difficult problem is what constitutes a proper delivery where the property, here the securities, is already in the possession of the third person, the plaintiffs, and the gift is not of the whole property but of an undivided one-half interest therein. At least two California cases have held that no delivery of anything is necessary to make such a gift as long as the joint tenancy is in fact created. (*Kennedy* v. *McMurray,* 169 Cal. 287, 295 [146 P. 647, Ann.Cas. 1916D 515], citing with approval *Farrelly* v. *Immigrant Industrial Sav. Bank,* 92 App.Div. 529 [87 N.Y.S. 54]; *Williams* v. *Savings Bank of Santa Rosa,* 33 Cal.App. 655 [166 P. 366].) But the more recent and better reasoned cases require some sort of a delivery even where the gift is of an undivided one-half of the property. But the delivery required is not a physical delivery, actual or symbolic, of the one-half undivided interest on the property. The delivery of the written instrument of joint tenancy to the donee or to someone on his behalf, is sufficient. In so holding, in *Hausfelder* v. *Security-First Nat. Bank,* 77 Cal.App.2d 478, 485 [176 P.2d 84], the court stated: ''The further argument that surrender of all dominion over the contents of box 423 was indispensable to a completed gift is met by the fact that the gift to respondent was not a verbal gift but was effected by an instrument in writing. In such event the gift is complete upon delivery of the writing.''

The same result was reached in *Hill* v. *Donnelly,* 56 Cal. App.2d 387 [132 P.2d 867]. There real property was held in the decedent-donor's name. She conveyed the property to a stranger, who reconveyed it to her and her brother as joint tenants. The decedent never ''gave'' anything to her brother, that is, nothing was ever delivered to him. The decedent gave the deed to a third party who took it to be recorded and returned the deed to the decedent who kept it in her possession until she died. The court held that there was an effective delivery of the deed, and that therefore a valid joint tenancy had been created so as to vest the property in the surviving brother at her death. (See also *White* v. *Bank of America,* 53 Cal.App.2d 831 [128 P.2d 600].)

■ These cases are in accord with the realities of the situa-

tion and in accord with the fundamental purpose of the delivery requirement. That purpose was well expressed in *Gordon* v. *Barr*, 13 Cal.2d 596, 601 [91 P.2d 101], where the Supreme Court stated: "The necessity for delivery in gifts of personal property has its genesis in the archaic doctrine of seisin. (Brown on Personal Property, p. 76; 20 Col. L. R. 196; 21 Ill. L. R. 341.) But in spite of the formalistic character of its origin, the requirement has salutary features which fully justify its retention in the law. It protects the property of the individual from ill-founded and fraudulent claims of gift by requiring strong concrete evidence that he really intended to part with his property. Such a precaution is especially desirable when, as is frequently the case, the alleged donor is dead at the time the claim is asserted. Moreover, by requiring some positive act of relinquishment such as manual tradition of the subject of the gift, the significance of the donor's act is forcefully brought home to him, and he is thus protected from ill-considered or impulsive donations of his property. (See Mechem, *The Requirement of Delivery in Gifts of Chattels*, 21 Ill. L. Rev. 341, 457, 568, at 348 et seq.)

"In the light of these desiderata such vague terms as 'constructive delivery,' 'symbolic delivery,' and 'parting with dominion and control' take on a new aspect and become more certain and explainable. Where there has been unequivocal proof of a deliberate and well-considered donative intent on the part of the donor, many courts have been inclined to overlook the technical requirements and to hold that a 'constructive' or 'symbolic' delivery is sufficient to vest title in the donee. However, where this is allowed the evidence must clearly show an intention to part presently with some substantial attribute of ownership."

This court recently, in *Oakland Bank of Commerce* v. *Hayes*, 159 Cal.App.2d 257 [323 P.2d 509], adopted the rationale of the Gordon case in upholding the delivery of a joint tenancy deed. There a husband and wife held property in joint tenancy. They drew up a deed purporting to place the property in joint tenancy in the names of the husband, wife and their daughter. The deed was recorded and returned to the possession of the husband and wife. The daughter never claimed any interest in or exercised any dominion over the property. The court held that there had been a sufficient delivery. In so holding, Mr. Justice Bray, speaking for the court, stated (p. 262):

"There is no evidence of manual delivery, in the strict sense of the grantors' handing the deed to themselves and defend-

ant as grantees. A lack of such manual delivery is not fatal to a delivery. It was said in *Moore* v. *Trott* (1912), 162 Cal. 268, 274 [122 P. 462] : 'It has long, if not always, been the rule that the delivery of an instrument is a question of intent, and that to a complete delivery no precise form of words and no particular character of act is necessary. The delivery is sufficient and complete if from any or all of the circumstances the grantor has made known his intention irrevocably to part with his dominion and control over the instrument, to the end that it may presently vest title in another.' "

The court also held that the fact that the deed, after recording, was returned to the physical possession of the husband and wife was not significant because their possession was not adverse to the title conveyed by the deed. Cases were cited in support of the rule that the fact the donee did not know of the joint tenancy deed did not preclude a valid delivery.

▮ Applying these rules to the facts here involved, it seems clear that the instrument alleged to create the joint tenancy was executed by decedent and was delivered to the plaintiffs who were already in possession of the securities. The intent to make a gift to respondent, as already pointed out, is clear. This, coupled with the delivery of the letter to plaintiffs, constituted a valid delivery. This created a valid joint tenancy in the securities if the instrument involved was of the type that it created such an estate. We turn now to a discussion of that problem.

▮ The method of creating a joint tenancy is set forth in section 683 of the Civil Code. In interpreting that section it has been held that a joint tenancy in personal property can only be created by a writing (*California Trust Co.* v. *Bennett*, 33 Cal.2d 694 [204 P.2d 324]) and the intention to create a joint tenancy must be specifically set forth in the writing. (*Estate of Dean*, 68 Cal.App.2d 86 [155 P.2d 901].) ▮ Both of these requirements here existed. The letter was a writing and such letter clearly states the intention of the donor to create a joint tenancy. ▮ The only debatable question is whether the instrument was operative as a present transfer of decedent's account into a joint tenancy. The precise words used in the letter were "I wish to make a joint ownership account with Marion Clemens . . . for sole survivor to receive all." Appellants argue that by the use of the verb "wish" decedent demonstrated that no present transfer was intended, and that he intended to complete the gift in the future. *McGarrigle* v. *Roman Catholic Orphan Asylum of*

*San Francisco,* 145 Cal. 694 [79 P. 447, 104 Am.St.Rep. 84, 1 L.R.A.N.S. 315], cited with approval in *California Trust Co.* v. *Bennett,* 33 Cal.2d 694, 699 [204 P.2d 324] ; *Cordano* v. *Wright,* 159 Cal. 610 [115 P. 227, Ann.Cas. 1912C 1044] ; *Litten* v. *Warren,* 11 Cal.App.2d 635 [54 P.2d 39], are cited in support of such an interpretation.

The word ''wish'' can undoubtedly be interpreted to express a desire that something will happen in the future. But that is not its only interpretation. It can also be interpreted as intending a present transfer, synonymous with the words ''I hereby grant,'' words that a lawyer would probably have used. How the word should be interpreted depends upon the language in the instrument itself and the circumstances surrounding the drawing of the instrument. (Code Civ. Proc., § 1860.) The primary question is the donor's intent. Here the intent is obvious. Lack of preciseness in the use of terms should not be used to frustrate that intent.

The circumstances here shown by the evidence are that the letter was written June 12, 1956 ; it was mailed June 18, 1956 ; it was delivered prior to 8 :30 a.m. on June 19, 1956 ; decedent died sometime before 11 a.m. on June 19, 1956. Under these circumstances the trial court was justified in finding that the term ''wish'' meant a present transfer.

The fact that the plaintiffs, as brokers, required certain forms to be filled out for the creation of a joint tenancy account is not controlling. It was so held in *Donovan* v. *Hibernia Sav. & Loan Soc.,* 90 Cal.App. 489 [265 P. 995]. The court, in that case, thoroughly reviewed the authorities and then stated (p. 503) : ''On principle, aside from authority, it seems manifest that no property right in money is lost by a deposit of the fund in a savings bank. The owner still retains all of his personal rights of transfer or assignment, and while the depositary bank may formulate and enforce certain rules relative to procedure and accounting, consistent with prudent management, yet the bank cannot in any sense restrict or take from the depositor any right of property. And it is elementary that the full right of property embraces the power of free disposition and control.''

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 20, 1959. Peters, J., did not participate therein.