*Decision will be entered under Rule 50.*

IRMGARD SANTOS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 46327. Filed June 18, 1956.

*M. M. Goodsill, Esq.*, for the petitioner.
*R. E. Maiden, Jr., Esq.*, and *E. A. Tonjes, Esq.*, for the respondent.

574

OPINION.

LeMire, *Judge:* The primary question presented is whether petitioner is liable as a transferee within the meaning of section 311 of the Internal Revenue Code of 1939.

The respondent has the burden of establishing the receipt of property by the transferee, lack of consideration for the transfer, and the insolvency of the transferor at the time of or immediately after the transfer. There is no issue as to the transferor's liability for income tax deficiencies.

The pertinent facts with respect to the property transferred have been stipulated and are set forth in our findings, and it would serve no purpose to reiterate them. The record clearly establishes that the transferor at all times material herein was insolvent.

Under the undisputed facts there can be no doubt that the transferee received property from the transferor while he was insolvent. The value of the property received without adequate consideration is contested. There is also a question as to when the transfer or transfers, as the case may be, became effective. The time element bears only upon the value of the property transferred and has little significance here, as will be developed later.

The petitioner and her husband, the transferor, were residents of Honolulu and were subject to the provisions of the Community Property Act of the Territory of Hawaii, which became effective June 30, 1945. Ch. 301A, sr. D–201, Session Laws of Hawaii 1945. This law was repealed effective June 30, 1949. Ch. 301A, sr. D–296, Session Laws of Hawaii 1949.

The record shows that petitioner's share of the community income for the period June 1, 1945, to June 30, 1949, was $154,976.51, which would likewise represent transferor's share, making a total community income of $309,953.02. Petitioner's income tax liability on her com-

munity income was in the amount of $70,289.91. Transferor's income tax liability was not less than that amount, making an aggregate tax liability of $140,579.82. The total community income of $309,953.02, less the aggregate tax liability of $140,579.82, leaves the net community income during the community period of $169,373.20. In 1947 petitioner and her husband caused $105,000 of their community earnings to be changed into the separate property of each, thus reducing the net community income of $169,373.20 to $64,373.20, which was the amount left to take care of the community expenses, including Territorial taxes.

Under the provisions of the Hawaiian community property law, the community property is liable for the debts and liabilities incurred for the protection or benefit of the community property. Ch. 301A, Session Laws of Hawaii 1945, sec. 13 (c), (d), and (h).[1] There is a rebuttable presumption that community debts are paid out of community funds even though a separate provision requires the husband to support the wife. *Van Camp* v. *Van Camp*, 53 Cal. App. 17, 199 Pac. 885; *In re Cudworth's Estate*, 133 Cal. 462, 65 Pac. 1041.

The evidence shows that the Santos family consisted of petitioner, her husband, and two minor children, and that they lived in a style and manner commensurate with their income. The Santoses lived in a home with over $50,000 worth of furniture and operated three late-model automobiles. Their tax returns, which are in evidence, show that during the community period approximately $9,000 was paid for Territorial income taxes.

We think the reasonable conclusion to be drawn from the evidence is that the community income was entirely exhausted by the payment of living expenses and other community debts. Thus, the respondent has made a prima facie case that the transfers in question were made from the separate property of the transferor, and the duty of

---

[1] Session Laws of Hawaii 1945:

Chapter 301A. COMMUNITY PROPERTY.

Sec. 13. Property subject to obligations.

\* \* \* \* \* \* \*

(c) The *community property shall be liable for debts contracted by the husband or by the wife or by both, and for liabilities of the husband or the wife or both arising out of tort or otherwise, in any transaction entered into or action taken by the husband or the wife or both relating to the management or control or disposition of or other dealing with or for the protection or benefit of the community property.* With respect to the liability of community property for such debts and liabilities, no distinction shall be made between community property subject to the management and control of the wife and community property subject to the management and control of the husband.

(d) As between the community property and the separate property of the wife or of the husband the community property shall be liable for the debts and liabilities referred to in paragraph (c) of this section.

\* \* \* \* \* \* \*

(h) Nothing in this section shall be deemed to affect or modify the obligation of the husband to support his wife and family and to discharge all debts contracted by the wife for necessaries for herself and family during marriage; provided, however, that if and whenever there is community property available for such purpose the husband shall be entitled to resort to such community property rather than to his separate property.

going forward with the evidence was upon petitioner. *George M. Newcomb*, 23 T. C. 954, 961. Petitioner made no attempt to show the amount of family living expenses during the critical period nor is there any showing that the transferor paid them from his separate property. Reliance is placed upon the fact that the community property law does not relieve the husband of the obligation to support his wife and family. Section 13 (h) of chapter 301A of the Revised Laws of Hawaii 1945, however, provides that the community property may be resorted to for such purpose. See footnote 1, *supra*.

Petitioner argues that one-half the community income became vested in her immediately and that there could be no transfer by her husband of her share. *Rowen* v. *Commissioner*, 215 F. 2d 641.

This argument overlooks the fact that the community here during the periods in question was still in existence. Until the community is dissolved by divorce or death, the interest of the parties to the community is the profits remaining after the debts of the community are paid. 1 de Funiak, Principles of Community Property sec. 159, pp. 445 *et seq.*

Petitioner contends that her share of the community income is $32,186.60. This amount is computed by subtracting the sum of $52,500, which was transmuted into her separate property by agreement, from the amount of $84,686.60, which it is stipulated is her share of the community income after her Federal income tax liability. The amount of $32,186.60 does not take into consideration the liability of petitioner's share of community income for family living expenses and other community debts to which her husband had a right to resort.

In addition to the amount of $32,186.60 petitioner contends she is entitled to a credit of $10,000 representing the face amount of a bond retransferred to her husband, and to a further credit of $9,957.45 representing the proceeds of her one-half interest in the house sold on April 4, 1950, which was held jointly by her and her husband.

The above amounts aggregate only $52,144.05, and assuming, for the purpose of argument, the correctness of petitioner's premise, she appears to concede her liability as transferee for a considerable amount, although somewhat less than the respondent has determined.

The respondent concedes that petitioner is entitled to a credit of $9,957.45, one-half of the net proceeds of the sale of the jointly held property, which he has taken into consideration.

The evidence establishes that the proceeds of the sale of a bond of the face amount of $10,000 were applied to the payment of the Territorial income taxes of petitioner and her husband, for which she was jointly and severally liable. Therefore, petitioner is not entitled to a credit for the amount of $10,000 as a repayment to her husband. The balance of $32,186.60 we have already held was presumptively

exhausted by family living expenses and other community debts properly chargeable thereto.

There remains for discussion the value of the property transferred to petitioner. The record shows that during the years 1948, 1949, and 1950 the transferor purchased cashier's checks in the total amount of $82,272.67 payable to Lawrence Santos and/or Irmgard Santos. Both petitioner and her husband testified that the checks were given to petitioner at the time of purchase, and she retained them in her possession until the fall of 1950 when she gave them to her husband for the purpose of purchasing Government bonds. Lawrence purchased United States Treasury bonds payable to bearer in the face amount of $80,000 at a cost of $81,674.32, and immediately after purchase gave the bonds to petitioner. Whether the transfer was effected at the time the cashier's checks were purchased or at the time the bonds were given to petitioner bears only on the value of the property transferred. After giving petitioner credit for her share of the jointly owned property in the amount of $9,957.45, the value of the property transferred would be in excess of the amount of $68,287.90, as determined by the respondent. On March 27, 1952, the Treasury bonds in the face amount of $70,000 were sold for $68,287.90.

Therefore, on this record, we hold that petitioner received a gratuitous transfer of property of the transferor, while insolvent, of the value of $68,287.90 and is liable as transferee to that extent.

The final issue is whether petitioner has shown facts sufficient to create an estoppel. As to this issue petitioner has the burden.

Petitioner claims that at the time her tax liabilities and those of her husband were under discussion with the revenue agents it was agreed that if she applied the proceeds of the bonds in question to discharge her individual tax liabilities no transferee liability would be asserted against her. The evidence clearly shows that transferee liability was never discussed, but that the agreement related solely to her individual income tax liabilities. No closing agreement pursuant to section 3760 of the Internal Revenue Code of 1939 was ever executed. If petitioner believed that in discharging her individual tax liabilities she was insulating herself against possible liability as a transferee, she was laboring under a mistake of fact. Petitioner, therefore, has failed to show any basis for the application of the doctrine of estoppel. *Blackhawk-Perry Corp.* v. *Commissioner*, 182 F. 2d 319, certiorari denied 340 U. S. 875; *Knapp-Monarch Co.* v. *Commissioner*, 139 F. 2d 863.

Reviewed by the Court.

*Decision will be entered for the respondent.*

MURDOCK, *J.*, dissenting: There are findings that Lawrence gave cashier's checks to the petitioner (mostly during community property years), Lawrence later used them to buy bonds, the bonds in the principal amount of $70,000 were sold by the petitioner on March 27, 1952, for the total amount of $68,287.90, the petitioner received checks in that amount, endorsed them, and they were used to pay her individual Federal income taxes for the years 1943 through 1947. The ultimate finding is made that Lawrence gratuitously transferred to the petitioner during the period April 15, 1948, to March 27, 1952, property having a value of at least $68,287.90, and the petitioner is liable as a transferee to that extent.

I would assume from the above that the holding of transferee liability was upon the theory that separate property of Lawrence was transferred to the petitioner and used to pay her income taxes.

The giving of the cashier's checks by Lawrence to the petitioner during the period when the community property laws were in effect would appear to be merely the receipt by the petitioner of a part of her share of community property rather than transfers of the separate property of Lawrence. Most of the checks were given during that period. I would not think that any transferee liability would result if the petitioner merely received a part of her share of the community funds during the period when the community property laws were in effect and eventually used those funds to pay her own taxes on her share of the community income.

The transfer of separate property of Lawrence to the petitioner at a time when he was insolvent would, under many circumstances, impress the money in the hands of the petitioner with a trust for the benefit of creditors of Lawrence, including the taxing authorities. However, here the transferred funds were paid to the collector of internal revenue to discharge taxes owed him by the petitioner. It does not appear that she had any other available funds at that time from which she could have paid her taxes. Also it appears that a large part, if not all, of her taxes was due upon her share of community income from the activities of her husband, which income never actually came into her hands. Thus, the Commissioner received the full benefit of the transfer and suffered no detriment by reason of the transfer since but for the transfer he would not have received payment of the petitioner's taxes. It does not appear that any equity in favor of the Internal Revenue Service would arise under such circumstances.

There is a further complication. The Commissioner determined overpayments of the petitioner's taxes for 1945 and 1946 in the total amount of $63,005.69, which was less than the $68,287.90 received for the payment of the petitioner's taxes. But there is no finding that

582

the petitioner actually received the overpayments or of what was done with them or who benefited from them. The Commissioner has the burden of proof to show transferee liability, and it does not seem to me that he has succeeded. Certainly he has not succeeded as to the entire $68,287.90 unless the burden of going forward shifted at some point not clear to me.

JOHNSON, J., agrees with this dissent.