[S. F. Nos. 2578, 2579.   Department Two. — July 27, 1901.]

In the Matter of the Estate of JAMES CUDWORTH, Deceased. ROYAL WALLACE CUDWORTH, Appellant. GAY ALLENDER ROSENBERG et al., Respondents.

ESTATES OF DECEASED PERSONS — FINAL ACCOUNT OF EXECUTOR — LARGE ESTATE — COMMISSIONS. — Where the estate of a deceased person was appraised at $117,567, and the executor accounted for $145,579, the increase being made up of rents, interest, and dividends collected by him, and it appears that the executor bestowed much care and labor in the management and control and protection of the property, during administration, for the period of two years, and that the property received could not be and was not distributed in kind, the court properly allowed to the executor, in the settlement of his final account, full commissions upon the property accounted for, instead of half commissions on all above the value of $20,000, as provided for in section 1618 of the Code of Civil Procedure.

ID. — SEPARATE PROPERTY OF DECEASED HUSBAND — COMMINGLING OF SEPARATE AND COMMUNITY FUNDS. — Where the amount of community funds received by the husband after marriage was inconsiderable, the commingling thereof with a large amount of his separate funds would not have the effect to draw his separate funds to the community. He had the right to use the small amount of community funds for the support of his family, and to leave his separate property intact; and there is no presumption that he did otherwise.

ID. — COMMINGLING WITH SEPARATE FUNDS OF WIFE — CLAIM AGAINST ESTATE. — The commingling of a large amount of the separate funds of the husband with a comparatively trifling amount of the separate funds of the wife, could not forfeit his separate property; but the wife, in such case, at most, could only have a claim against the estate of the husband for her funds so commingled.

ID. — GIFT OF SEPARATE INCOME OF WIFE TO HUSBAND. — Where it appears that the wife gave the income of her separate property to her husband to pay household expenses, or to use as he chose, such gift became the separate property of the husband.

ID. — NATURAL INCOME OF SEPARATE PROPERTY OF HUSBAND. — Where the separate property of the deceased husband can be traced, the profits and income which have arisen naturally therefrom, in the way of rents, interest, and dividends upon stocks, without any active investment in any business or employment, are his separate property.

ID. — SHRINKAGE OF PERSONAL PROPERTY OF HUSBAND — DISTRIBUTION. — Where a great shrinkage appears in the personal property of

the deceased husband, at the time of his death, compared with what would naturally be derived from his income, no part of the personal property can be accounted community property, and the whole amount of the personal property on hand at the time of the distribution of his estate must be distributed as his separate property.

APPEALS from a decree settling the final account of an executor and from a decree distributing the estate of a deceased person.   J. V. Coffey, Judge.

The facts are stated in the opinion of the court.

Knight & Heggerty, for Appellant.

Henley & Costello, for Respondents in Appeal No. 2578.

Drown, Leicester & Drown, for Respondents in Appeal No. 2579.

HENSHAW, J.—The two appeals taken to this court in *In the Matter of the Estate of Cudworth, Deceased,* may be considered together.   Both are prosecuted by the son, a devisee under the will.   The one is from that part of the decree settling the final account of the executor, wherein he is allowed full commissions upon the amount of the estate accounted for by him.   The other is from that part of the decree of final distribution which adjudges certain property left by the deceased to be community property, instead of separate property, and distributes it accordingly.

1. The estate of deceased consisted of real property valued at $79,000; stocks, bonds, notes, and mortgages valued at $38,567.   The executor accounted for $145,579, the increase being made up of rents, interest, and dividends collected by him.   It is contended that the property of the estate was distributed in kind, involved no labor beyond the custody and distribution of it, and that therefore, under section 1618 of the Code of Civil Procedure, commissions should have been computed upon all of the estate above the value of twenty thousand dollars at one half of the ordinary rate fixed by law. But the court in probate found, " that all of the property belonging to said decedent at the time of his death, and then forming part of his estate, and which has not since been disposed of by said executor, is not now in the same form or condition in which the same was in at the time of the death of

said decedent, or at the time when it first came to the possession of said executor, and that all of the same cannot now be, and is not, distributed in kind; that the property of the estate of said decedent, and the care, management, and administration thereof by said executor, has necessarily involved, and the said executor has properly bestowed and expended thereon, labor beyond the mere custody and distribution of the same." This finding derives sufficient support from the evidence. The only witness upon the question was the executor himself, and no effort was made to impeach or impugn his testimony. He testified that he took personal charge and possession of all the property described in the inventory, protected, managed, and cared for the same during administration; that it became necessary for him to surrender certain stock and bonds in exchange for new issues; that, before doing so, it became incumbent upon him to make, and he did make, a thorough and careful investigation of the affairs of the corporations; that he collected and realized on many of the promissory notes belonging to the estate, made diligent efforts to collect debts due, gave much personal time and attention to the condition and protection of twenty or more tenements belonging to the estate, bestowed labor upon their repairs and in efforts to rent and keep them rented, and protected the estate against suit to quiet title brought against him in his official capacity. The administration lasted for more than two years, during which time large sums of money were collected and disbursed in the preservation, protection, and care of the property of the estate, in the collection of rents, in the making of repairs, pursuit of tenants, and in the following up of debtors, in the examination and settlement of street assessments, payment of taxes and insurance premiums and water rates; in the making of contracts with laborers, carpenters, plumbers, and painters, and the necessary repairs for tenants; in the prosecution of a foreclosure suit. Besides all this, owing to the peculiar nature of the properties of the estate, it was necessary to keep an elaborate system of accounts with the tenants and other debtors of the estate, executing satisfactions of mortgages, indorsing upon numerous notes the many small payments made thereon, and finally, a contest of the will having been instituted, it became the duty of the executor to take due precautions to protect the will and make preparations for the contest, which in fact he did, though the contest was finally dismissed. Under

this showing the court was justified in its allowance of full commissions.

2. Upon the second appeal — that from a part of the decree for final distribution — the facts are, that after the filing, by the executor, of his final account, with his petition for distribution, the appellant, a son of deceased, filed his answer, alleging that all the property in the estate of which his father died seised and possessed was separate property, and prayed that it be distributed to him and his brother Emery under the will. The widow, Johanna Cudworth, in due time filed her answer and petition, alleging her marriage to the deceased, and praying distribution under the law of the land and the proofs to be adduced. Upon the hearing, the following facts were shown: At the time of Cudworth's marriage he owned real and personal property as follows: Cash in bank, $5,029; stock of the Savings and Loan Society of the value of $22,500; and sixty-two parcels of real estate. Of this real estate, forty-five pieces were sold after marriage for $91,292.54, and seventeen were still owned at the time of his death, and appraised at $74,850. The total value of the real and personal property thus owned by Cudworth at the time of his marriage was $193,671. After his marriage and before his death, rents were collected to the aggregate amount of $29,453, and dividends on this identical stock to the amount of $7,109. When he died his estate was in the following condition: There were eighteen parcels of real estate, — seventeen owned at the time of his marriage, and one acquired after marriage, by foreclosure of a mortgage given to secure moneys loaned. The total value of the real estate thus owned at the time of his death was $79,850. The personal property consisted of stocks, promissory notes, and bonds, and was of the value of $58,467. The total value of the separate property of Cudworth, then, at the time of his marriage, was $193,671, whereas the total value of his estate at the time of his death, notwithstanding the large sum of over $36,000 derived from rents and dividends after his marriage, was only $138,317. From the time of his marriage until the time of his death, the deceased had no trade, occupation, or employment whatsoever, excepting that during that period he employed his time in attending to looking after and caring for his separate property, in collecting the rents therefrom, in making sales thereof, and collecting interest on his

mortgages, notes, and bonds, and dividends on his stock, and in making repairs and improvements upon his properties. The only property that he received or earned from any other source during all this time was the sum of $2,080, which he earned as an appraiser for the Savings and Loan Society in the two years between September, 1876, and September, 1878. The widow testified that she had an income from her own separate property at the time she married the deceased. For the first six years after the marriage, that income amounted to $68 per month. After that, until 1888, it was $90.58 per month; from 1888 until 1892, it was $48 per month; and from 1892 until October, 1893, it was $70.50 per month; and after that, until Mr. Cudworth's death in May, 1898, it was $32.50 per month. "All the money that I received as income from my property was turned over by me to my husband, to be used for household purposes and as he wanted to." After her marriage, she expended $1,500 to put a building upon the property that she owned. She also bought a lot, and paid for it $1,500, and another, for which she paid $1,000. She paid taxes and insurance and repairs on her own property; paid for the maintenance, education, clothing, and music for her two daughters from her marriage until Cudworth's death; traveled with her daughters to Europe and South America, paying all expenses of both. Cudworth gave her $500 for expenses. She had in the German Savings and Loan Society, over and above all of these payments, in January, 1898, some $3,500. Her income she "gave Cudworth, to pay the household expenses of their family of six persons, and to spend as he wanted to"; that she kept no account, and could not tell how much went into the common fund or was turned over. Cudworth gave her forty dollars a month until 1892, and sixty dollars a month from that on until his death. It was shown that certain notes and mortgages, the property of the estate, were notes and mortgages given by the purchasers of parcels of Cudworth's land, owned by him at the time of his marriage, and thereafter sold. These notes and mortgages, with substantially all the rest of the personal property of the estate, were by the court decreed to be the community property of the decedent, and Johanna, his widow, and the one-half of it was distributed to her accordingly.

These facts, then, establish that Cudworth was engaged in no employment, other than the care and preservation of his

own property; that he received no property except from rents and incomes of that which he owned at the time of his marriage, and from the sales of it, except the trifling sum of $2,000, which he received in the course of two years, as an appraiser for the loan society. At the time of his death his estate is worth $55,000 less than at the time of his marriage, and more than $90,000 less than the value of his estate at the time of his marriage, together with the rents and dividends which he received from his separate property during his marriage. When the computation is made as to the difference between the amounts which the wife gave to Cudworth monthly, as the income of her property, and the amount which monthly he gave back to her in the form of an allowance, it will be seen that she gave him a total of $15,847, and received back $11,880, leaving the net amount which she gave him $3,967, or the equivalent of a monthly gift to him of $15 for the period of twenty-one years. Upon the other hand, during that same time, the actual cash which Cudworth received from his separate property, derived from income and sales, was $150,000, or an average of $570 per month. Notwithstanding this, the court decrees, in effect, that all of the personal property left by Cudworth at the time of his death was community property, and distributes it accordingly. Yet when Cudworth died his personal property was of the value of only $58,000, or nearly two thirds less than the amount of actual cash that he had received from his separate estate during coverture.

In support of this decree, respondent relies upon the principle thus enunciated by Ballinger in his work on Community Property: "When the separate property or funds of either spouse is intermixed or commingled with community property, so that the separate property has lost its identity and cannot be clearly traced or segregated, the community, being the paramount estate, draws the whole mass to it, and it becomes community property. The general rule laid down by the courts is, that such confusion works a forfeiture of the separate character of the property so commingled." This principle, it may be said, is well supported by authority, but there is a modification of it equally important, and peculiarly apposite to this case, and the same learned author thus expresses it: " But where the community interest is inconsiderable in the property with which it has been intermingled, the community will not draw to it the separate estate." It does

not appear that there was here any commingling of community funds with the separate estate of the deceased, nor yet does it appear that there was any commingling of funds of the separate property of the wife with the separate property of the husband, such as could justify a decree that all must be considered community property. As to community funds, it is shown that there were none, saving the trifling amount of two thousand dollars, earned by Cudworth as an appraiser. Where a husband, charged with the support of a family, has some income derived from his separate property, and some from his earnings which are community property, there is no presumption that he has supported the family out of the separate property and preserved intact the community funds. He is at perfect liberty to devote all that is necessary of the community earnings to the family support, and to preserve his separate property intact. But if it be conceded, though it is not shown, that there was any commingling of the separate funds of the wife with the separate funds of the husband, it was commingling of such a trifling sum with such a large amount as to make it to the last degree inequitable to hold that the husband's property thereby lost its separate character and became community. Clearly, under every principle of law and justice, where the separate property of the husband can be traced, as here it distinctly can, when it passes into his estate the original capital and its transmutations are still separate property, equally with the rents, income, and profits derived therefrom, —those profits, that is to say, which have arisen naturally and without the active engagement by the husband of his capital in some business or employment. In this case all of the income of the property was derived from rents, interest, and dividends, and was as wholly and purely separate property as was the real estate, the stocks, bonds, and notes from which it flowed. But, applying this principle, there were not only no profits from the transactions of Cudworth during his lifetime which could be accounted community property, but the actual value of his personal property had shrunken greatly.

Finally, Mrs. Cudworth testifies that she gave the money to her husband to pay household expenses, or to do what he pleased with it. There was nothing unnatural in her thus contributing from her separate funds this small proportionate amount toward family maintenance, and if, as she states, she did " give" this money to him to do as he pleased with it, the gift

itself made the property his separate property, as much as any gift of property by him to her would have effectuated the same result.   But if it should still be said that the property remained the property of the wife, and was given over merely to the custody of the husband, the utmost of her right would be a claim and demand upon his estate for this sum of three thousand dollars.

The order and decree settling the final account of the executor is therefore affirmed, while upon the appeal from that part of the decree of distribution adjudging the personal property of the deceased to be community property, and distributing it according to law, the decree is reversed, with directions to the trial court, upon the evidence adduced and the facts found, to adjudge and decree that the personal property in the estate of said decedent is separate property.

Temple, J., concurred.

McFARLAND, J., concurring. — I concur in the judgment; but I do so most reluctantly, and only because I see no legal way to escape the harsh treatment of respondent which our law on the subject of husband and wife allows.   In nearly all other civilized countries, marriage immediately vests in the wife some estate in the property owned by the husband at the time of the marriage; but such is not the law here, and if he chooses, as in the case at bar, to afterwards do nothing except to collect his rents and profits, he may, after a long period of faithful wifehood, leave her penniless.   Her only chance to acquire by marriage any interest in property is to marry a man who has nothing, with the hope that he may afterwards earn something in which she will have a community right. The case at bar is one of peculiar hardship; for here the wife, having a slender income from a little separate property which she owned, allowed the husband to take that income, and gets nothing back from it.   The monthly allowance which he let her have — and whether for personal or domestic purposes does not appear — was very small for a man of his means. But the conclusion reached in the opinion cannot, under the law, be avoided.