[Civ. No. 10752. First Appellate District, Division One.—July 15, 1938.]

In the Matter of the Estate of ELSA LISSNER, Deceased. HENRY H. LISSNER et al., Respondents, v. CAMILLE HARRIS, as Administratrix, etc., et al., Appellants.

Morris M. Grupp and Alfred J. Stern for Appellants.

Glikbarg & Wolf and Philip Selig, Jr., for Respondents.

BRAY, J., *pro tem.*—This appeal arises out of a petition to determine heirship.

Elsa Lissner died without issue, intestate, three days after her husband, Berthold Lissner, died, in November, 1935. The respondents are a brother and two sons and a daughter of a deceased brother of Berthold Lissner. The appellants are sisters and brothers of Elsa Lissner. Three groups of property are involved in the dispute. The first

consists of certain stocks which at the time of the death of Berthold Lissner were held in joint tenancy between him and his wife. The court found that these were the separate property of Berthold Lissner, transferred by gift to his wife, and therefore under the provisions of section 229, Probate Code, should be distributed to respondents. The second consists of the proceeds of a life insurance policy on the life of Berthold Lissner of which his wife was the beneficiary. The court held this fund was community property and should be divided equally between appellants and respondents. The third is a promissory note for $3,046.56 against the estate of Berthold Lissner, payable to Elsa Lissner, which the court ruled was also community property and should be divided equally between the two sets of heirs.

As to the first group, the court found that the stocks were purchased from the proceeds of certain real property in Los Angeles, consisting of two different parcels, which real property the court found to have been the separate property of Berthold. Appellants claim that said real property was community property because they contend that these properties came to Berthold by purchase rather than by gift, as found by the court. The claim of purchase is based, first, upon the recital of $10 consideration in the deed of the property to Berthold and his brothers from their mother and stepfather, which deed reserved a life estate to the grantors. Secondly, upon a like recital of a $10 consideration in a deed transferring the stepfather's life estate in said property to the Lissner brothers. Thirdly, upon the guaranty to the stepfather of a life income of $250 a month. Fourthly, upon a trust agreement made by the Lissner brothers, in which they assumed the payment of mortgages on said real property. All these transactions took place while Berthold and Elsa Lissner were husband and wife, and appellants contend that said transactions amount to a purchase and being a purchase during coverture, the property thereby obtained was necessarily community property.

Appellants further contend that even assuming the real property to be the separate property of Berthold, the proceeds therefrom, which were used for the purchase of the stocks, were so commingled with the community property that they lost their identity as separate property. Again, after the purchase of the stock, a joint tenancy was created

by Berthold and Elsa Lissner in themselves. The creation of this joint tenancy the court found to be the gift which is required by section 229, Probate Code. Appellants originally contended that the creation of the joint tenancy could not and did not constitute a gift. However, appellants have practically abandoned that position. *Estate of Harris,* 9 Cal. (2d) 649 [72 Pac. (2d) 873], is determinative of this question, the court there holding definitely that the creation of a joint tenancy between husband and wife in the separate property of either constitutes a gift from one to the other, and that upon the death of the surviving spouse the property covered by the joint tenancy is to be distributed to the heirs of the predeceased spouse, under section 229, Probate Code, just as the court did in this case. Also, appellants contend that the evidence shows that before the creation of the joint tenancy Berthold had declared that said stocks were as much Elsa's as his, thus changing their character from separate property to community property.

The stocks are the most valuable portion of the estate, and the main question in connection with them is the character of the real property in Los Angeles from the proceeds of which the court found that the stocks were purchased. While there is evidence that these proceeds were commingled with community funds, there was likewise evidence from which the court was able, very easily, to trace them directly into the stock. The most that can be said is that there was a conflict in the evidence upon this question—and under the well-known rule, it is the duty of the appellate court to accept the findings of the lower court upon this subject. There is ample evidence to support these findings. The mere mingling of separate property of a husband or wife with community property does not change its character from separate to community property unless the property so mingled cannot be traced (*Scott* v. *Remley,* 119 Cal. App. 384 [6 Pac. (2d) 536]).

The Los Angeles real property originally belonged to Matilda Lissner. She was the mother of Berthold Lissner. In 1907, Mrs. Lissner, who remarried and was known as Matilda Cohn, together with her husband, Meyer Cohn, deeded the real property in question to Berthold Lissner and his two brothers, reserving to the grantors a life estate in the property. The deed contains the recital ''in consideration

of $10.00 in gold coin of the United States''. Matilda Cohn died in 1909; Meyer Cohn, the other life tenant, lived until 1935. In 1917 Meyer Cohn deeded to Berthold and his brothers his life interest in the property and in this deed there is, likewise, a recital of a $10 consideration.

There is no evidence in the case that these $10 sums mentioned in these two deeds, or any other sums, were ever paid for the property. Appellants contend that the burden is on the respondents to show that the money was not paid; that they have failed so to do, therefore, it must be considered that Berthold and his brothers did pay $10 for each deed, some portion of which sums was paid for by Berthold, and being purchases during coverture, were community property.

The lower court found that these deeds were gifts rather than purchases, in spite of these recitals. It is apparent from the testimony in the case, together with the inferences which the court might reasonably draw from the actions of the parties to the deeds, that there were no moneys paid for these deeds, the first one being a gift to her sons from the mother and stepfather and the second one being a gift to his stepsons from the stepfather, life tenant. In each instance, however, the conveyances were made with reservations or under arrangements which are hardly consistent with appellants' contention of a purchase. Dr. Lissner testified that there was no money paid by anybody at the time of the transfer of the property. Appellants attempted to narrow his testimony in this respect down to transactions occurring in 1926, but, taking the examination of the Doctor as a whole, it is plain that he was referring to the entire transactions concerning the Los Angeles property. That was evidently the determination of the lower court, and such is a reasonable inference from the witness' testimony, and being such, cannot be disregarded upon appeal. Moreover, the mere recital of a payment in a deed is not evidence that such payment was actually made. (*Black Eagle Oil Co.* v. *Belcher*, 22 Cal. App. 258 [133 Pac. 1153].)

By contract made in 1917, Meyer Cohn agreed to surrender his life estate to the Lissner brothers in exchange for an agreement guaranteeing him $250 per month for life. The undisputed testimony is that none of the brothers ever were called upon to make any payment to Meyer Cohn. The Lissner brothers also agreed to assume the payment of two

mortgages upon the property aggregating $150,000. Here again, no sums were ever actually paid by Berthold or his brothers. Appellants contend that the agreement to pay the $250 per month life interest, in the event that such sum was not produced by the property, and the assumption of the mortgages, constitute a purchase of the real property and thereby made it community property. However, this is contrary to the expressed rule of the courts in this state. (*Noe* v. *Card,* 14 Cal. 576; *McRae* v. *McRae,* 67 Cal. App. 480 [227 Pac. 933]; *Smith* v. *Smith,* 47 Cal. App. 650 [191 Pac. 60]; *Shaw* v. *Bernal,* 163 Cal. 262 [124 Pac. 1012].) Such agreements and even payments from community funds do not change the separate property into community property. The law will not infer from such expenditures alone an agreement to change the character of the property or even an intent to charge the separate property with a lien in favor of the community property. The transactions between Matilda Cohn and Meyer Cohn on the one hand and Berthold Lissner on the other, show that the interest obtained by the latter were gifts rather than purchases.

One of the appellants testified that Berthold, before the creation of the joint tenancy, stated to his wife, referring to the stock in question, ''It is as much your stock as mine and I want it settled now.'' Appellants contended that such statement converted the stock from separate to community property. Apparently, the lower court did not believe this testimony, as it was inconsistent with Berthold's actions in keeping the stocks in his own name for many years afterwards and with many other circumstances shown by the evidence. At most, the statement created a conflict in the testimony, and this court is bound by the action of the lower court in either rejecting it entirely or in determining that it is overbalanced by the other evidence in the case. The same rule must be applied to the effect of a reference in Berthold's will made in 1932, in which he states that the community property of himself and wife consists of certain land not involved here, and of bonds and cash amounting to less than $20,000. It is not clear just why appellants stress this matter in view of the fact that the property at issue here is stocks and not bonds, but assuming it to apply in some way and giving it the interpretation claimed by appellants it would merely conflict with other evidence in the

case which conflict the court has decided against the position of the appellants.

The ruling of the lower court that the stocks were purchased from the proceeds of the separate property of Berthold, and by reason of the creation of the life tenancy constitute a gift to the surviving wife, and upon her death, under the provisions of section 229, Probate Code, should be distributed to Berthold's heirs, is correct.

■ As to the second group of property, the proceeds of the life insurance policy on the life of Berthold Lissner, respondents at the oral argument of the appeal, conceded appellants' position to be correct. The premiums on the policy were paid from community funds, but Berthold Lissner had named his wife Elsa Lissner as his beneficiary. Under the law this constituted an inchoate gift by the husband to the wife of the proceeds of the policy, which became complete upon his death, and being a gift it became her separate property. (*Estate of Miller*, 23 Cal. App. (2d) 16 [71 Pac. (2d) 1117]; *Travelers Ins. Co.* v. *Fancher*, 219 Cal. 351 [26 Pac. (2d) 482].) As stated, respondents concede that the lower court erred in distributing the life insurance proceeds as community property; that the decree of the lower court should be corrected, and the said proceeds should be distributed solely to the appellants, the heirs of Elsa Lissner.

■ The third group consists of a promissory note in the sum of $3,046.56 executed by Berthold Lissner in his lifetime to his wife, Elsa. Appellants contend that, being an instrument in writing acquired by Elsa during coverture, it carries the presumption under the provisions of section 164, Civil Code, that it was the wife's separate property, and that there was no evidence offered to rebut this presumption. Respondents argue that said section does not apply to a promissory note, and claim that Elsa never paid any consideration for the note because there was no evidence of her ever drawing a check for a sum as large as $3,000. Appellants contend, however, that the consideration might have consisted of small advances. The court found that this note was community property. However, there is no evidence upon which to base this finding, in view of the presumption under section 164, Civil Code, if that section applies. Respondents cite no authority for their contention that it

does not apply. The section is specifically worded, *"whenever any real or personal property, or any interest therein or incumbrance thereon, is acquired by a married woman by an instrument in writing the presumption is that the same is her separate property"*. (Sec. 164, Civ. Code.) (Italics ours.) A promissory note is, of course, personal property, and the debt thereby evidenced is acquired by the holder by an instrument in writing. "Every negotiable instrument is deemed *prima facie* to have been issued for a valuable consideration." (Sec. 3105, Civ. Code.) The burden of overcoming this presumption is upon the party who claims that the note was executed without consideration. (19 Cal. Jur. 1044.) Respondents attempted to meet this burden by showing that Mrs. Lissner never drew a check in a sum as large as $3,000, or anywhere near that amount, in her life. This is not sufficient to overcome the presumption. The consideration need not have been paid in a lump sum, it could have been paid in small amounts. The note could have been a gift from the husband to the wife. Appellants were entitled to stand upon the note itself, and the respondents must produce some evidence that there was no consideration for it. (*Cashman* v. *Harrison*, 90 Cal. 297 [27 Pac. 283]; *Yellow Jacket Gold & Silver Min. Co.* v. *Holbrook*, 24 Cal. App. 687 [142 Pac. 128].) Merely showing no large check was drawn by Mrs. Lissner is not enough, because that circumstance is perfectly consistent with the presumption, rather than overcoming it in the slightest degree. The note, therefore, was the separate property of Elsa and should be distributed to her heirs.

It is ordered, therefore, that the portion of the decree appealed from determining the distribution of said stocks be and the same is hereby affirmed; and that those portions of said decree determining the distribution of the proceeds of the life insurance policy, and of the promissory note, be and the same are hereby reversed with directions to revise and re-enter those portions of said decree in conformity with the views hereinabove expressed. It is further ordered that the costs of appeal be paid out of the assets of the estate. (Probate Code, sec. 1232.)

Knight, J., and Cashin, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 12, 1938. Edmonds, J., voted for a hearing.