[Civ. No. 6809. Fourth Dist. Dec. 19, 1962.]

MILTON A. HICKS, Plaintiff and Respondent, v. MARGARET LOUISE HICKS, Defendant and Appellant.

*Assigned by Chairman of Judicial Council.

148

Walter A. Young for Defendant and Appellant.

Thompson & Colgate for Plaintiff and Respondent.

COUGHLIN, J.—The issues on this appeal concern the decision of the trial court respecting the community or separate character of property owned by a husband and wife at the time of their divorce.

The plaintiff, who is the respondent herein, and the defendant, who is the appellant herein, were husband and wife; married on September 1, 1950; had a son and a daughter; separated on June 6, 1958; and respectively, by a complaint and cross-complaint, sought a divorce, which was granted to each of them. The decree granting such also awarded custody of the son to the plaintiff and of the daughter to the defendant; ordered payment to the defendant of $500 per month as alimony and $200 per month as support for the daughter; directed the plaintiff to pay for the defendant the sum of $10,000 as additional attorney's fees, and $2,500 court costs, payable from the community property of the parties; determined and described the amount of their community property; divided the same; allowed the defendant to use the homestead which it found to be separate property, for a period of five years; and declared that all other property in the possession of either of them, respectively, was their separate property. The defendant appeals from all parts of the judgment except those granting a decree of divorce to herself and to the plaintiff and awarding custody of their minor children.

On appeal the defendant makes no contention concerning the orders relating to the payment of alimony, child support, attorney's fees and court costs, but directs her attack upon

those provisions of the judgment respecting the property issues determined thereby, contending that they are the result of an erroneous application of the law. In some instances, however, she argues the sufficiency of the evidence to sustain the findings of fact upon which the provisions in question are based.

At this juncture it is proper to indicate that if there is any substantial evidence in the record to sustain a finding of fact which supports the judgment, whether it be direct or indirect, contradicted or uncontradicted, the fact in question must be accepted as true by the appellate court (*Estate of Arstein*, 56 Cal.2d 239, 240 [14 Cal.Rptr. 809, 364 P.2d 33]; *Primm* v. *Primm*, 46 Cal.2d 690, 693 [299 P.2d 231]); that all inferences reasonably deducible from the evidence which support the judgment will be accepted, while those which do not support it will be rejected (*Hamilton* v. *Pacific Elec. Ry. Co.*, 12 Cal.2d 598, 602 [86 P.2d 829]; *Greco* v. *Oregon Mut. Fire Ins. Co.*, 191 Cal.App.2d 674, 681 [12 Cal.Rptr. 802]); that "Findings of fact must be liberally construed to support the judgment" (*Johndrow* v. *Thomas*, 31 Cal.2d 202, 207 [187 P.2d 681]); and that, in the absence of any indication to the contrary, the findings as made, by implication, include findings of all special facts necessary to sustain them. (*Richter* v. *Walker*, 36 Cal.2d 634, 640 [226 P.2d 593]; *Greco* v. *Oregon Mut. Fire Ins. Co.*, *supra*, 191 Cal.App.2d 674, 678.) The recital of the facts herein and the scope of the findings in the premises, both express and implied, will be stated in accord with these rules.

At the time of marriage the plaintiff was the owner of (1) 98 per cent of the common stock of Palm Springs Builder's Supply Company, a corporation, hereinafter referred to as the "Supply Company", which had current assets in the sum of $268,652.32, subject to current expenses in the sum of $107,613.57, and fixed assets in excess of $300,000.00; (2) 25 per cent of the capital stock of the Palm Springs Water Company; (3) certain real property, including that known as the Las Palmas Lots; and (4) a country club membership. The stock of the "Supply Company" and the water company had been acquired by inheritance. The defendant contends that the plaintiff actually was the sole owner of the "Supply Company" and that the corporation operating the same was his *alter ego*. It is not necessary to rule upon this contention as the conclusion advanced is of no legal consequence to a determination of the issues in this case.

At the time of divorce the plaintiff still owned the "Supply Company" and a 25 per cent interest in the Palm Springs Water Company, which the defendant concedes are his separate property.

During the marriage the plaintiff maintained a personal bank account, being the same account he had prior to marriage, into which he deposited and from which he withdrew both community and separate funds. At the time of divorce, the balance on deposit therein was $2,500.

After marriage the plaintiff acquired, and at the time of divorce held legal title to, (1) a house situated on real property located in the Thunderbird Estates Tract, which is referred to as the "Thunderbird residence," and upon which the defendant placed a homestead following commencement of this action; (2) 184 shares of Financial Federation, Inc.; (3) four country club memberships; (4) accounts receivable in the total sum of $2,390; (5) an interest in an oil lease known as the "Jacobs-Howsley Oil Lease Royalty," which had been purchased for $6,250; (6) 357 shares of the stock of Indian Wells Country Club Estates, a corporation; and (7) household furniture and furnishings located in the "Thunderbird residence."

During marriage the plaintiff and defendant acquired and sold two community property lots in the Indian Wells Country Club Estates Tract, and a joint tenancy one-half interest in five other lots in the latter tract identified as the Prom lots. Also during marriage, i.e., in 1952, the plaintiff and defendant, as joint tenants, acquired title to Lot 19 in the Thunderbird Country Club Estates Tract from the "Supply Company"; executed a $5,000 promissory note in consideration therefor; and obtained a $20,000 bank loan thereon. Thereafter the property was improved. In 1955 it was sold. Part of the proceeds from this sale were paid to the loaning bank and the balance thereof purportedly was paid to the plaintiff and defendant. However, the evidence establishes that this balance was not deposited in the plaintiff's personal bank account. On the other hand, there is evidence from which it may be inferred that the whole transaction was handled by the "Supply Company"; that no profit accrued therefrom; and that a net loss of $2,499.02 was sustained.

In 1957 the Milt Hicks Investment Company, a corporation, was organized; was a subsidiary of the "Supply Company"; issued its entire capital stock to the latter company in exchange for leases on real property which the "Supply Com-

pany'' had owned for many years; engaged in renting this property; and operated at a loss, which created a capital deficit in the sum of $6,661.11. The defendant claims that the investment company was the *alter ego* of the plaintiff; that all of its assets belonged to him personally; and that these assets, being acquired during marriage, are community property. Whether the company in question is or is not the *alter ego* of the plaintiff, under the circumstances of this case, is not material to a decision respecting the right of the defendant to a share of its property. The assets foundational to the existence of the investment company were acquired by the ''Supply Company'' from its own funds. ▮ If the latter company also, as contended by the defendant, is the *alter ego* of the plaintiff, the property in question is his separate property; any transmutation of that property into another form did not change its separate character; and the existing assets in whatever form they may be, are the plaintiff's separate property. ▮ The investment company was operated by a manager. There is no showing that the plaintiff's services during marriage in any way contributed to any increase in its assets. He received no salary therefrom. None of the transactions thereof were financed through his personal bank account. The defendant's contention that the investment company assets constituted community property is without merit.

At the time the complaint for divorce was filed the defendant had on deposit in her name, in bank and savings and loan accounts, the total sum of $14,782.39.

The court found that the Thunderbird residence was the separate property of the plaintiff; awarded the defendant the right to occupy the same for a period of not to exceed five years; and directed the plaintiff to satisfy all payments accruing thereon during such occupancy on account of taxes against, insurance premiums connected with, and promissory note installments secured by a deed of trust on said property.

The court also found that the Financial Foundation, Inc. stock, the four country club memberships, the accounts receivable, the oil lease royalties, and 132 shares of the Indian Wells Country Club Estates stock were community property, and awarded each of the parties a one-half interest therein after payment of attorney's fees and court costs as provided by the judgment. In addition, the court found that the $6,250 used to purchases the oil lease royalties was the separate

property of the plaintiff and directed that all subsequent earnings therefrom, to the extent of this amount with interest, should be paid to the plaintiff. The court also directed that the 132 shares of "Indian Wells" stock was subject to the payment of the $7,500 unpaid balance on a promissory note executed by the plaintiff to a bank from which he had borrowed $20,000.

The plaintiff was awarded the $2,500 remaining in his personal bank account, and the defendant was awarded the $14,782.39 on deposit in her name.

The judgment further decreed that all property not specifically found to be community property, which was in possession or standing in the name of either party, was the separate property of the party "in whose possession or name the same may be."

There is evidence which supports the conclusion that, with two exceptions, all of the property which was acquired during marriage, including both separate and community property, was attained through the use of funds on deposit in the plaintiff's personal account. The exceptions are: (1) Lot 19 of the Thunderbird Estates Tract; and (2) the lot upon which the Thunderbird residence was built, and for which the "Supply Company" paid $2,000. The defendant contends that the deposits in this bank account during marriage totalled $557,124.71. The evidence satisfactorily traces the source of $546,545.93 of this amount, identifying $267,580.81 thereof as the plaintiff's separate property and $278,965.12 as community property. ▮▮▮ The balance of the amount which the defendant contends was deposited in the plaintiff's bank account, viz., $10,578.78, having been acquired during marriage and its source not being identified, is presumed to have been community property.[1] (Estate of Bryant, 3 Cal.2d 58, 66, 68 [43 P.2d 529].)

The separate property deposits consisted of $91,610.90 from dividends, $66,266.70 in proceeds from sales of separate assets, and $109,703.21 from separate loans.

▮▮▮ As a general rule income from separate property investments, such as dividends upon shares of corporation stock, are separate property (Estate of Granniss, 142 Cal. 1, 5 [75 P. 324]; Estate of Cudworth, 133 Cal. 462, 468 [65 P. 1041]; Van Camp v. Van Camp, 53 Cal.App. 17, 27-28

---

[1] There was testimony that the plaintiff engaged in considerable gambling and the amount in question may be attributed to this source. (Tarien v. Katz, 216 Cal. 554, 558 [15 P.2d 493, 85 A.L.R. 334].)

[199 P. 885]), unless the personal services of the owner during marriage have contributed thereto. *(Estate of Cudworth, supra,* 133 Cal. 462, 468.) The same rule applies to the proceeds from the sale of separate property. *(Sweeley* v. *Sweeley,* 28 Cal.2d 389, 391 [170 P.2d 469]; *Mason* v. *Mason,* 219 Cal. 111, 112 [25 P.2d 461]; *Beaudry* v. *Felch,* 47 Cal. 183, 185.)

The evidence in the instant case is sufficient to sustain a finding that neither the dividends paid to the plaintiff nor the proceeds received from the sale of his separate property reflects any value for services rendered by him during marriage.

 The proceeds of a loan obtained upon the credit of separate property, whether because of its hypothecation as security for repayment, or in reliance upon its ownership by the lender, are separate funds. *(Gudelj* v. *Gudelj,* 41 Cal.2d 202, 210 [259 P.2d 656]; *Estate of Abdale,* 28 Cal.2d 587, 592 [170 P.2d 918]; *Estate of Ellis,* 203 Cal. 414, 416 [264 P. 743]; *Kenney* v. *Kenney,* 128 Cal.App.2d 128, 138 [274 P.2d 951]; *Hogevoll* v. *Hogevoll,* 59 Cal.App.2d 188, 193-195 [138 P.2d 693]; *Stewart* v. *Stewart,* 113 Cal.App. 334, 336 [298 P. 83].) The evidence in the case at bar, which we have reviewed in its entirety, adequately supports an implied finding that the proceeds from the loans heretofore referred to were the separate property of the plaintiff. The record before us includes a transcript of the oral testimony pertinent to the issues on appeal, together with 108 exhibits among which are a résumé of deposits and withdrawals from the plaintiff's bank account for the period covering September 1950 to December 1958, income tax returns filed during marriage, and a number of escrow instructions with attendant data. In this, as in other instances herein where we pass upon the sufficiency of the evidence, it is not necessary that we detail the basis for our conclusion in the premises. *(Estate of Arstein, supra,* 56 Cal.2d 239, 241; *Fomco, Inc.* v. *Joe Maggio, Inc.,* 55 Cal.2d 162, 164 [10 Cal.Rptr. 462, 358 P.2d 918]; *Estate of Updegraph,* 199 Cal.App.2d 419, 424 [18 Cal.Rptr. 591]; *Edwards* v. *Container Kraft Carton etc. Co.,* 161 Cal.App.2d 752, 756 [327 P.2d 822]; *Pores* v. *Purity Milk Co.,* 135 Cal.App.2d 305, 309 [287 P.2d 169].) Several of the loans in question were obtained upon giving the Thunderbird residence as security and the execution of promissory notes by both the plaintiff and defendant. Contrary to the defendant's contention, the fact that she joined

in signing these notes, and the deeds of trust securing payment of the same, did not require a finding, as a matter of law, that the funds thereby obtained were community property. (*Flournoy* v. *Flournoy,* 86 Cal. 286, 293 [24 P. 1012, 21 Am.St.Rep. 39]; *Kenney* v. *Kenney, supra,* 128 Cal.App.2d 128, 138; *Stewart* v. *Stewart, supra,* 113 Cal.App. 334, 337.)

The community deposits consisted of $172,463.92 from salaries and bonuses, $28,848.93 in oil lease royalties, $14,032 in proceeds from the sale of the Indian Wells lots, $45,620.27 in proceeds from the Prom lot sales, $18,000 from a community loan, and $10,578.78 from an unidentified source.

The defendant contends that at least $400,000 of the money on deposit was community property. This contention is without legal support; is based on a statement of counsel for the plaintiff, made during argument on the defendant's motion for a new trial, which is not evidence in the case; and upon a misconception of the law respecting the effect of depositing both separate and community funds in a single account. The mere commingling of separate with community funds in a bank account does not destroy the character of the former if the amount thereof can be ascertained. (*Huber* v. *Huber,* 27 Cal.2d 784, 792 [167 P.2d 708]; *Estate of Goodhew,* 174 Cal.App.2d 75, 80 [344 P.2d 63]; *Tassi* v. *Tassi,* 160 Cal.App.2d 680, 689 [325 P.2d 872]; *Kenney* v. *Kenney, supra,* 128 Cal.App.2d 128, 136; *Thomasset* v. *Thomasset,* 122 Cal.App.2d 116, 124 [264 P.2d 626]; *Estate of Lissner,* 27 Cal.App.2d 570, 574 [81 P.2d 448].)

The Thunderbird residence lot originally was purchased by the "Supply Company" for $2,000, the date of acquisition not being shown by the record. During the first year of marriage the plaintiff built the residence in question and the parties occupied the same. Thereafter, by deed dated September 25, 1951, the "Supply Company" conveyed the lot to the plaintiff "as his sole and separate property." Simultaneously, the defendant conveyed to the plaintiff any interest she might have therein, by a deed bearing the same date and containing the following declaration: "This Deed is given for the purpose of vesting title in the grantee herein as his sole and separate property free and clear of any claims which might arise by reason of the marital status of the parties hereto."

The plaintiff financed construction of the residence by borrowing money from a bank on unsecured notes totalling $24,500, and by obtaining materials on credit from the

"Supply Company". Subsequently, by notes dated September 19, 1951, March 26, 1954, and January 16, 1958, signed by both plaintiff and defendant, and secured by deeds of trust on the subject property, the plaintiff borrowed $20,000, $4,000, and $25,000 respectively. The $20,000 loan paid the bank for the balance due on the $24,500 obligation. Proceeds from the $4,000 loan were deposited in the plaintiff's personal bank account and used for improvements to the residence. From the $25,000 loan, $10,796.79 was used to retire the two previous loans by paying the balances due thereon, and the remainder, i.e., $14,203.21, was deposited in the plaintiff's personal bank account. ▮▮▮ The trial court was entitled to conclude that the original bank loans were made to the plaintiff on the credit of his separate property as, at the time they were obtained, he had been married less than a year and his community earnings were not then of paramount significance, whereas his separate property approximated $500,000 in value. (See *Tassi* v. *Tassi, supra,* 160 Cal.App.2d 680, 688.) ▮▮▮ There was evidence that the cost of construction of the subject residence was $70,000. On this basis it may be inferred that the value of the materials furnished by the "Supply Company" exceeded $40,000. It is not unreasonable to conclude that these materials were furnished to the plaintiff on the strength of his separate ownership of 98 per cent of the stock in the company which furnished them. His obligation to pay for the same, as he testified, is part of an outstanding promissory note from him to that company upon which there is unpaid the total sum of $53,029.64. If, as defendant contends, the "Supply Company" was the plaintiff's *alter ego,* then the materials furnished came from his separate property, i.e., the assets of the business operated by that company. The evidence adequately supports the conclusion that the Thunderbird residence was purchased with separate funds. Furthermore, on the same day this residence was conveyed to the plaintiff, the defendant deeded to him whatever interest she might have had therein and declared that it was her intention that he should own the same as his separate property. To avoid the obvious effect of this deed, the defendant now claims that the evidence establishes, as a matter of law, that this transfer was obtained from her through misrepresentation and the exercise of undue influence. Reliance is placed upon the presumption of undue influence which attaches to transactions between

husband and wife where the former obtains an advantage from the latter, and the alleged lack of any showing to the contrary. There is substantial evidence refuting these charges and overcoming the presumption relied upon. In contending to the contrary, the defendant's argument is directed to the weight of the evidence rather than to its non-existence. ▇▇▇ Furthermore, if the transfer in question had been obtained by misrepresentation and undue influence, it was not void but voidable; no notice of rescission thereof has been given, although nine years have gone by; and, not being rescinded, the deed effecting the same is fully operative. (*Estrada* v. *Alvarez*, 38 Cal.2d 386, 390 [240 P.2d 278]; *Loud* v. *Luse*, 214 Cal. 10, 12 [3 P.2d 542].)

The court found that 132 of the 357 shares of Indian Wells stock acquired by the plaintiff during marriage were community property, and that the balance thereof, *viz.*, 225 shares, were his separate property. Parts of this stock were purchased at different times. The plaintiff submitted proof which adequately traced the source of the funds used in making these purchases to dividends from the "Supply Company," proceeds from the sale of his separate property, money loaned him in reliance upon his separate holdings, and oil lease royalties. The court determined that the oil lease royalties were separate property, and its conclusion respecting the community character of the 132 shares found to be such, in part may have been based on this determination. Actually only 50 shares were purchased with oil royalty funds. During marriage the plaintiff considered the oil royalties as his separate property. The evidence shows that the oil lease interest was purchased with his separate funds, and the court found accordingly but, for some unexplainable reason, concluded that it was community property subject to the payment to plaintiff of the amount he paid therefor, *viz.*, $6,250. The plaintiff has not appealed from the judgment and must accept the consequences of the ruling in question. The record does not indicate the formula by which the trial court arrived at its conclusion that 132 shares of the Indian Wells stock were community property. If the finding in question had been limited to 50 shares its propriety would have been more readily apparent from the evidence. It should be noted, however, that the 132 shares in question were subjected to the payment of a $7,500 balance due on a promissory note executed by the plaintiff. By so providing, it would appear that the court's decision respecting the

Indian Wells stock resulted from the application of a procedure simulating that applied to the oil lease interest. In any event, as the plaintiff has not appealed from the judgment he must abide the decision of the court in the premises. In his brief he has indicated his willingness to accept the findings as made.

The defendant contends that the court was not authorized to determine the separate character of property in reliance upon proof tracing the source of funds used in acquiring the same, when those funds were withdrawn from a bank account into which both separate and community funds had been deposited, without accounting for the separate funds theretofore withdrawn from the account. There is no merit to this contention. �as heretofore noted, separate funds do not lose their character as such when commingled with community funds in a bank account so long as the amount thereof can be ascertained. ▮ Whether separate funds so deposited continue to be on deposit when a withdrawal is made from such a bank account for the purpose of purchasing specific property, and whether the intention of the drawer is to withdraw such funds therefrom, are questions of fact for determination by the trial court. A determination of these issues is part of the process of tracing the source of funds used in making the purchase under review. ▮ If the source of such funds is traced to separate property, even though the process of tracing involves a withdrawal from a bank account consisting of commingled separate and community funds, the property acquired is separate property. (*Gudelj* v. *Gudelj, supra,* 41 Cal.2d 202, 210; *Huber* v. *Huber, supra,* 27 Cal.2d 784, 791; *Tassi* v. *Tassi, supra,* 160 Cal.App.2d 680, 689; *Kenney* v. *Kenney, supra,* 128 Cal.App.2d 128, 135; *Thomasset* v. *Thomasset, supra,* 122 Cal.App.2d 116, 124; *Estate of Lissner, supra,* 27 Cal.App.2d 570, 574.)

Furthermore, the conclusion of the trial court respecting the separate character of the property awarded to the plaintiff as such is supported by other facts. As heretofore noted, the plaintiff deposited in his personal account separate property stock dividends and sale proceeds totalling $157,877.60. His withdrawals for payments on the Thunderbird residence, purchase of the Indian Wells stock awarded to him, and in acquiring the oil lease royalty, totalled $57,250. He also paid federal and state income taxes from this account of which

not to exceed $51,566.76 are chargeable to his separate income.[2] Withdrawals for other separate expenditures, if any, except payments upon separate loans, have not been identified. Thus the evidence establishes that the deposit of separate funds in the subject bank account attributable to the sources noted, exceeded the withdrawals for the purposes indicated by the sum of $49,260.84.

In addition to the aforesaid separate funds, the plaintiff deposited in his account the sum of $109,703.21 which was borrowed by him on the credit of his separate property. This increased the total of his separate funds on deposit to $267,580.81. Besides the withdrawals heretofore noted, the plaintiff withdrew from his account the sum of $64,115.04 which he applied in partial repayment of the foregoing loans. There remains unpaid on these loans, for which the plaintiff is personally liable, the sum of $45,588.17.[3] His note to the "Supply Company" in the sum of $53,029.64 also is unpaid.

Recapitulating, it appears from the evidence that the total of all separate funds on deposit in the plaintiff's personal bank account was $267,580.81; the total withdrawn for separate purposes was $172,931.80; and the total separate deposits exceeded the total separate withdrawals by $94,649.01. In addition, the plaintiff's present total unpaid obligation upon separate loans is $98,537.81, for which he is solely liable except for the payment of $7,500 chargeable by court decree to the 132 community shares of Indian Wells stock.

Evidence establishing the availability of sufficient separate funds for separate purposes supports an inference that the owner thereof used such funds for such purposes. *(Estate of Goodhew, supra,* 174 Cal.App.2d 75, 80.) Under the facts heretofore related, we must assume in support of the judgment at bar that the trial court inferred that the plaintiff used his separate funds to discharge his separate loans and to acquire or improve the property which it found to be his separate property. *(Richter* v. *Walker, supra,* 36

---

[2]The evidence establishes that the plaintiff and defendant filed joint federal and state income tax returns requiring the payment of $98,320.03; that $46,753.27 of this amount was chargeable to federal income taxes on the salary and bonuses paid to plaintiff, which were community income; that the balance noted above, i.e., $51,566.76, includes not only taxes on the plaintiff's separate income, but also state taxes on the community income, federal and state taxes on the oil royalties and on profits from the sale of community or joint tenancy property.

[3]This amount includes the $7,500 unpaid balance to which, by the judgment, the 132 community shares of Indian Wells stock are subject.

Cal.2d 634, 640; *Smith* v. *Smith,* 195 Cal.App.2d 707, 712 [16 Cal.Rptr. 99].)

The determination of the trial court respecting the separate character of the property in question also finds support in the application of other principles of law to other facts adequately established by the evidence. As noted, the total of all community and joint tenancy funds deposited in the plaintiff's personal account amounted to $289,544.90. The total of all expenditures for the purpose of acquiring or improving the community or joint tenancy property, retiring the community or joint tenancy loan, and paying federal income taxes on the plaintiff's salary and bonuses, amounted to $125,085.81. Upon deducting the latter from the former there remains to the credit of community funds the sum of $164,459.09.

The plaintiff claims that the evidence supports the conclusion that $434,460 was withdrawn from the bank account in question for family living and other community expenses; directs attention to an exhibit showing the payees of all checks drawn upon the subject bank account; presents to this court a detailed analysis of these expenditures for each of 10 months during marriage, taking one month from each year thereof, from which he draws the conclusion in question; argues that, as community withdrawals consumed all of the community deposits, any other withdrawals were from his separate deposits; and contends that the decision of the trial court includes an implied finding to this effect.

The defendant contends that the evidence is not sufficient to support a finding that the family living expenses exceeded $70,000;[4] directs attention to the fact that the exhibit upon which the plaintiff bases his computation shows a number of cash withdrawals; otherwise does not specify any insufficiency in the exhibit to indicate the purpose for which the checks noted therein were drawn; and urges that the plaintiff should have testified respecting the community or separate character of each expenditure made by him.

Our review of the total evidence confirms the sufficiency thereof to support an implied finding that not less than $164,459.09, being the amount of community and joint tenancy funds deposited in excess of the funds withdrawn for the community and joint tenancy purposes heretofore desig-

---

[4] On oral argument the plaintiff stated that the family living expenses approximated $75,000.

nated, viz., the acquisition and improvement of the community and joint tenancy property, the repayment of the community or joint tenancy loan, and the payment of federal income taxes. The evidence shows that the parties enjoyed a very luxurious standard of living; occupied a home in Palm Springs, the cost of which was estimated to be $72,000; employed a housekeeper and a gardener full-time; paid a monthly swimming pool maintenance charge; belonged to five different country clubs; and spent all of the summer months of each year in a rented home away from Palm Springs. The court awarded the defendant for the support of herself and her daughter the sum of $700 per month. It is not unreasonable to infer that a like amount would be necessary to maintain the plaintiff and his son. If these amounts had been expended during marriage, the total thereof, to date of filing the complaint would have been $152,600; and if paid from community funds, would have reduced the amount thereof not otherwise accounted for to $11,859.09. This balance would be reduced further by the payments made on account of state income taxes levied against community earnings; state and federal income taxes on the oil lease royalties; similar taxes on the profits from sales of real property; and the acquisition of furniture and furnishings for the Thunderbird residence, which the court found to be community property. Furthermore, the balance in question is fully offset by the $14,782.39 on deposit in the defendant's name in banks and other financial institutions. The evidence indicates that the defendant had no separate source of income. It thus appears that all of the community funds on deposit were expended for community purposes.

When analyzed, the defendant's objection in the premises does not go to the plaintiff's lack of an accounting but to his method of accounting. Nevertheless, the court has accepted the same. The attack is directed to the weight of the evidence in the premises rather than to its legal sufficiency. This is not a proper subject for consideration on appeal.

When community expenses are paid from a bank account in which both community and separate funds have been deposited, it is presumed that they have been paid from the community funds therein *(Estate of Neilson,* 57 Cal.2d 733, 742 [22 Cal.Rptr. 1, 371 P.2d 745]; *Huber* v. *Huber, supra,* 27 Cal.2d 784, 792; *Estate of Cudworth, supra,* 133 Cal. 462, 468); that, if at the time of such payment, no community funds are on deposit and, for this reason, the payment

is made from the separate funds therein, the latter will be reimbursed therefor from subsequent deposits of community funds *(Kenney* v. *Kenney, supra,* 128 Cal.App.2d 128, 136; *Thomasset* v. *Thomasset, supra,* 122 Cal.App.2d 116, 126; *Hill* v. *Hill,* 82 Cal.App.2d 682, 698 [187 P.2d 28]); and that, in the event the amount of community expenses paid from the composite account exceeds the amount of community funds deposited therein, the balance of the money deposited, whether remaining in the account or transmuted to another form, is separate property. *(Estate of Neilson, supra,* 57 Cal.2d 733, 742; *Estate of Arstein, supra,* 56 Cal.2d 239, 241; *Estate of Updegraph, supra,* 199 Cal.App.2d 419, 423; *Kenney* v. *Kenney, supra,* 128 Cal.App.2d 128, 136; *Thomasset* v. *Thomasset, supra,* 122 Cal.App.2d 116, 127; *Logan* v. *Forster,* 114 Cal.App.2d 587, 601-602 [250 P.2d 730]; *Estate of Ades,* 81 Cal.App.2d 334, 338-339 [184 P.2d 1].)

Applying the foregoing principles of law to the facts heretofore stated, it is apparent that the separate property findings of the trial court are fully sustained by the evidence.

Among other things, the defendant also contends that the plaintiff is chargeable with one-half of the proceeds from the sales of properties which they held as joint tenants. A part of these were deposited in the account of the ''Supply Company'', and a part in the plaintiff's personal account. As to the former, the evidence is sufficient to establish a net loss of $2,499.02. As to the latter, the evidence shows a net gain of $7,967.63. A withdrawal of the items comprising the joint tenancy transaction in question from the computations heretofore considered could not affect the legal conclusions reached. Contrariwise, to the extent that such withdrawal would reduce the community funds in the plaintiff's personal account, it would add support to these conclusions. Although the evidence tends to establish that the plaintiff and the defendant had no agreement to hold these properties other than as joint tenants, no issue respecting joint tenancy property was raised by the pleadings, and the court made no finding as to the character of the proceeds therefrom after deposit, or as to the authority of the plaintiff to dispose of the same. The property issues presented by the instant complaint, cross-complaint, and answers thereto, were limited to those relating to the existence of separate and community property alone. The plaintiff contends that under these circumstances the trial court had no authority to dispose of or direct an accounting as to the alleged joint tenancy prop-

erties in question. This contention is meritorious. (Generally see *Schindler* v. *Schindler*, 126 Cal.App.2d 597, 605 [272 P.2d 566] ; *Walker* v. *Walker*, 108 Cal.App.2d 605, 608 [239 P.2d 106].)

In her briefs as well as in oral argument, the defendant advocates the proposition that the decisive issue in this case stems from the plaintiff's alleged failure to account for the community funds deposited in his personal bank account; that the rules governing a trustee's management of trust funds coming under his control also govern a husband's management of community funds coming under his control; thus a husband has the obligation of showing that such community funds were expended only for community purposes; that the plaintiff has failed to make such a showing; and that she, the defendant, is entitled to a judgment against the plaintiff for one-half of the amount of the community funds deposited in his personal bank account not shown to have been used for community purposes. Even assuming the correctness of the legal premise so advanced, its application to the facts at bar does not support the defendant's position. As heretofore noted, the evidence in the record at hand is sufficient to sustain a finding that the community funds on deposit in the plaintiff's personal account were consumed in the payment of community obligations.

In substance, the trial court awarded the plaintiff the $2500 remaining in his personal bank account, and awarded the defendant the $14,782.39 on deposit in her name in other accounts. The court did not decide whether these accounts were separate or community property. The evidence is sufficient to sustain a finding that the balance in the plaintiff's account consisted of his separate funds and on this basis could support the award to him as made. On the other hand, the court might have determined that the funds in all of the accounts were community property, finding that the defendant had no separate source of income, and made its award on this basis. (*Estate of Durham,* 108 Cal.App.2d 148, 151 [238 P.2d 1057] ; *Estate of Durham,* 108 Cal.App.2d 154, 155 [238 P.2d 1061].) In the latter event, the defendant could not complain as she received more than her legal share. (*De Burgh* v. *De Burgh,* 39 Cal.2d 858, 874 [250 P.2d 598] ; *Bordin* v. *Bordin,* 193 Cal.App.2d 132, 134 [13 Cal.Rptr. 837].)

However, there is one aspect in which the judgment is improper and as to which it should be reversed.

Article "TWELFTH" thereof decrees that: "All properties of every kind and character in the possession or names of either of the parties" not specifically described in those provisions of the judgment describing the community property of the parties, "constitute the separate property and estate of the party in whose possession or name the same may be." By this decree the court purports to determine that certain property is separate property whether or not an issue respecting its character had been presented for adjudication either by the pleadings or the evidence. The error in such a decree is apparent. For example, the defendant contended that the plaintiff obtained the proceeds from the sale of joint tenancy property and that she was entitled to a one-half interest therein. The plaintiff contended that in the instant action the court had no authority to adjudicate the joint tenancy rights and obligations of the parties. Some of the proceeds in question were deposited in the "Supply Company" bank account and others in the plaintiff's bank account. If these proceeds were withdrawn from either of these accounts and used to purchase undisclosed personal property in the plaintiff's name, the defendant, nevertheless, would retain an interest therein. *(Fish* v. *Security-First Nat. Bank,* 31 Cal.2d 378, 387 [189 P.2d 10]; *Teutenberg* v. *Schiller,* 138 Cal. App.2d 18, 24 [291 P.2d 53].) By this decree the court declares the same to be the separate property of the plaintiff. Furthermore, each of the parties might have undisclosed property which, upon examination, might be shown to have been acquired with community funds. The fact that the present state of the evidence, under the issues framed by the pleadings and by it, authorized the court to infer that the plaintiff's bank withdrawals for community purposes exceeded the community funds deposited, does not foreclose such a supposition.

That part of the judgment contained in article "TWELFTH" thereof is reversed with instructions to modify the same in accord with the views expressed herein. In all other respects the judgment is affirmed. Neither party will recover costs on appeal.

Griffin, P. J., and Shepard, J., concurred.